## MARTIN v. SHOUB.

[No. 9,051. Filed June 29, 1916.]

1. SALES.—*Warranties.*—*Representations.*—Antecedent representations made by the vendor as an inducement to the buyer, but forming no part of the contract when concluded, are not warranties. p. 590.

2. SALES.—*Warranties.*—*Representations.*—A representation is an

Martin v. Shoub—62 Ind. App. 586.

antecedent statement which is made to induce one to enter into a contract, but which is not an element thereof, its purpose being accomplished when the contract is made; whereas a warranty is, by the intention and agreement of the parties, a term of the contract.   p. 590.

3.  FRAUD.—*Fraudulent Representations.*—*"Warrant."*—In an action for damages for fraudulent representations inducing the purchase of a spavined stallion, the character and nature of the language used by the vendor in statements as to the soundness of the horse made prior to the sale showed that such statements were misrepresentations and were not intended as warranties; and, although the word "warrant" occurred in some of the statements, it was used in its colloquial sense, meaning to assure or to affirm confidently.   p. 591.

4.  FRAUD.—*Fraudulent Representations.*—*Liability.*—Where a vendor of personal property induces one who relies on his statements to purchase personal property by knowingly making false and fraudulent representations as to the quality of the goods sold, such vendor is not relieved from liability for his fraud by the mere fact that the sale is evidenced by a contract expressly omitting warranties.   p. 591.

5.  FRAUD.—*Remedies of Buyer.*—*Action for Breach of Warranty.*—*Action for Fraud.*—If misrepresentation, in inducing a sale of personal property, is accompanied by fraudulent intent to deceive, it may support an action for fraud, although an action in tort for breach of warranty would lie.   p. 591.

6.  FRAUD.—*Remedies of Buyer.*—*Action for Breach of Warranty.*—*Action for Fraud.*—An action for fraud and an action in tort for breach of warranty, based on the same facts, will not lie at the same time.   p. 592.

7.  APPEAL.—*Verdict.*—*Evidence.*—*Sufficiency.*—In an action for damages sustained by reason of a vendor's fraudulent representations whereby a vendee was induced to purchase a spavined stallion, the evidence is sufficient to sustain a verdict for the plaintiff where it shows that the vendor knowingly made false and fraudulent representations that the stallion involved was sound in every way at the time of the sale; whereas it was in fact spavined and worthless for breeding purposes, and that the vendee was induced to make the purchase by reason of such fraudulent representations.   p. 592.

From DeKalb Circuit Court; *Frank M. Powers,* Judge.

Action by Peter Shoub against Wells R. Martin. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Fred R. Freeman, C. S. Smith* and *P. V. Hoffman,* for appellant.

*William P. Endicott* and *Edgar W. Atkinson,* for appellee.

IBACH, J.—This was an action for damages sustained by reason of fraudulent representations of appellant which induced appellee to purchase a stallion from him. A verdict in favor of appellee for $900 was returned. The errors assigned mostly turn upon the one question whether there was sufficient evidence upon which to predicate a verdict of fraud. This question is presented in various ways, under assignment of error in overruling appellant's motion for new trial, among the grounds of which were the overruling of a motion to direct a verdict for defendant, the giving of certain instructions based on the theory that there was evidence to show fraud, the refusal to give other instructions on the theory that the evidence was insufficient for that purpose, and the insufficiency of the evidence to support the verdict. Error is also assigned in the court's overruling appellant's motion for judgment on the answers to interrogatories returned by the jury.

It appears from the evidence that appellant came to appellee and proposed to sell to him the stallion in question; that appellee was at first not disposed to buy the horse, but later agreed to trade some machinery for him. The parties had two conversations prior to the consummation of the sale. Appellant said that the horse was sound and all right; that he had to be so; that appellant could not sell high priced horses unless they were all right; that he had to be honest to sell them; that he warranted the horse to be sound and all right; that if he sold the horse to appellee, he would have to be honest

and straight with him. Appellee stated that he relied on these statements, and had expected to get a warranty with the horse. The sale was consummated by the following written contract, which was dictated by appellant in appellee's presence, and was signed by both parties:

"This article witnesseth that, whereas, I, Mr. W. R. Martin have this day sold to one Mr. Peter Schoub, one certain stallion known as Brisko, Percheron, No. 40201, and said horse is to be transferred to Mr. Schoub with a good title, free and clear from all incumbrances, and I have taken in exchange for the same one certain Avery separator, and one Birdsell No. 6 clover huller, and one Rumely Traction engine, belts and all other attachments complete, ready for thresher, also one twelve horse power gasoline mule engine, nearly new, purchased one year ago, and buzz saw and all attachments complete: Mr. Schoub agrees to deliver the buzz saw, etc.    *    *    *

"This is the only contract made by us and is not to be changed or varied by any promises or representations by ourselves or other people."

After the sale, it was found that the stallion had bone spavin, and was on that account worthless for breeding purposes. There was evidence to show that he was spavined at the time of the sale. The evidence was also such that the jury might infer either that appellant knew of the spavin at the time of the sale, or was chargeable with knowledge in the exercise of reasonable care. *Wheatcraft* v. *Myers* (1914), 57 Ind. App. 371, 377, 107 N. E. 81. Appellee at the time he saw the horse before the sale noticed that he was lame, but he also noticed a slight sore on his foot, and appellant told him that the horse hurt his foot in the car, and this occasioned the lameness. There is testimony that the men holding the horse kept moving him about

so that appellee could not see the leg which was spavined. It was shown that a veterinary found indications of spavin before the sale, and told the men handling the horse not to show him on the pavement, but to keep him on soft ground. The value of the horse if sound was shown to be at least $1,100 or $1,200; with the spavin (in view of the statute of this State which prevents the advertising of such a horse as a stallion without giving notice of such defect, §3299n et seq. Burns 1914, Acts 1913 p. 48, and which renders a spavined stallion worthless for breeding purposes) the horse was worth no more than $150.

Appellant contends very earnestly that the evidence as to any statements made by him shows warranties, not representations; that these warranties were merged in the written contract, and therefore could not be sued on as warranties, and, because intended as warranties, could not constitute fraudulent representations. We do not agree with these contentions. "Antecedent representations made by the vendor as an inducement to the buyer,

1. but forming no part of the contract when concluded, are not warranties." Benjamin, Sales §610; *Hopkins* v. *Tanqueray* (1854), 15 C. B. 130, 80 Eng. C. L. 129. "Representation is an

2. antecedent statement which is made to induce the entering into the contract, but which is not a term in or element of that contract. Its purpose is accomplished when the contract is made. Warranty, on the other hand, is by the intention and agreement of the parties, a term in, a part of, or an incident to, that contract, and cannot exist without it." Mechem, Sales §1224. In this state it seems that intention is necessary to a warranty. *Jones* v. *Quick* (1867), 28 Ind. 125; *Smith* v. *Borden* (1902), 160 Ind. 223, 66 N. E.

681; *Bowman* v. *Clemmer* (1875), 50 Ind. 10; *House* v. *Fort* (1837), 4 Blackf. 293.

In the present case the evidence is such that it may be said that the language used by appellant was not intended as a warranty in the strict legal sense of the word. Appellant made statements as to the soundness of the horse in which he did not use the word "warrant." In some statements he used the word "warrant"; but one meaning of that word is "to assure, to affirm confidently," and it is often used colloquially in this sense. That there was no intention to warrant the horse may be inferred from the written contract which expressly omitted warranties. What appellant said as to the condition of the horse was such as to induce appellee to believe that he was sound and all right, and therefore to purchase him. If appellant made statements as to the horse's condition which he knew or should have known were false, and thus induced appellee to purchase him, relying on such statements, the effect of such fraud can not be overcome merely by a contract expressly omitting warranties. Because the fraud was so successful as to induce the buyer to take a contract without a warranty is all the more reason that there should be liability on the fraud. *Case Threshing Machine Co.* v. *Feezer* (1910), 152 N. C. 516, 67 S. E. 1004; *Robinson & Co.* v. *Ligon* (1909), 146 Mo. App. 634, 124 S. W. 590.

Even if the language used was sufficient to constitute a warranty, it is well settled that if misrepresentation is accompanied by fraudulent intent to deceive, it may support a tort action for fraud, although an action in tort for breach of warranty would lie. The restriction is

that both actions will not lie at the same time, and there is necessarily quite a difference in the proof required to make out a case of fraudulent representations from that required to make out a case of breach of warranty. Tiedeman, Sales §180; 1 Parsons, Contracts *580; Page, Contracts §61; Schouler, Personal Property §606; *Hughes* v. *Funston* (1867), 23 Iowa 257; *Rose* v. *Hurley* (1872), 39 Ind. 77.

The evidence was sufficient to sustain the verdict; there was no error in the giving and the refusing of instructions; and we do not find the answers to the interrogatories in irreconcilable conflict with the general verdict.

Judgment affirmed.

NOTE.—Reported in 113 N. E. 384. What amounts to a breach of warranty as to soundness of horse, 32 L. R. A. (N. S.) 182; 102 Am. St. 622. See under (5) 20 Cyc 87, 89.