## CLARKE AUTO CO., INC. *v.* REYNOLDS

[No. 17,872.  Filed December 1, 1949.]

588

*James C. Jay* and *S. J. Kagan,* both of Indianapolis, for appellant.

*Philip C. Correll,* of Indianapolis, for appellee.

WILTROUT, J.—This is an action for damages arising out of the sale of a used automobile by appellant to. appellee. Appellee's complaint is in two paragraphs, the first being based upon the theory of false representations knowingly made by appellant with intent to deceive and which were relied upon by appellee. The second paragraph is based upon an express warranty made by appellant that the automobile was in good working and mechanical condition.

Trial by jury resulted in a verdict for appellee in the sum of $650. The jury also answered certain interrogatories and stated that the damages awarded were compensatory and not punitive. From the overruling of its motion for a new trial appellant prosecutes this appeal, assigning such action as error. The grounds of the motion are: (1) the insufficiency of the evidence; (2) that the verdict is contrary to law; and (3) that the damages assessed are excessive.

The jury could have found the following facts from the evidence: Appellee owned a 1939 Pontiac automobile which he "traded in" to appellant on a 1941 Buick two-door sedan on January 9, 1948. On that day he went to appellant's place of business and talked with one of appellant's salesmen, a Mr. Curry. Curry

put two gallons of gasoline in the Buick, and they drove four or five blocks. The car had been driven over 100,000 miles. Appellee knew something about automobiles as to driving, but not as to mechanical parts, such as transmissions and rear ends. Appellee testified that the gears sounded like they were going out of it and asked Curry if they were all right. Curry said they guarantee they were O. K. Appellee heard a growl in the transmission, but did not know if it was in the transmission or not. He asked Curry about it and Curry said, "Mr. Reynolds, I'll guarantee you it is in A-1 shape." Curry also said he would guarantee the car for 30 days. Appellee asked how long they had had the automobile and was told that they had just received it in a trade-in; that it had been a one-owner car owned by an old gentleman who lived out of town; and that it had not been driven hard. Appellee took Curry's word about the automobile and believed he was telling the truth. Appellee had no knowledge that the statements were not true, and believed the car to be in A-1 condition.

The jury, in answer to interrogatories, stated that the Buick was not in as good condition as it was represented to be by appellant, but that the officer or agent of appellant who made the representations did not know at the time of making them that the automobile was not in as good condition as was represented.

Appellee signed a printed purchase order which makes no reference to warranties or representations as to the condition of the car. In fine print the document provides: "All promises, verbal understandings or agreements of any kind pertaining to this purchase not specified herein are not binding on the seller."

That evening appellee took the car to a filling station, and when they attempted to put gasoline in the tank one side of the tank fell to the ground. The tank

was wired up and later a new tank installed. Appellee had the oil changed in the motor and also had the grease in the rear end and transmission changed. There was heavy grease or what appeared to be 70 weight oil in the car. The grease in the transmission was heavy grease, 140 weight, and was difficult to remove. Regular weight oil and grease were put in the car, whereupon appellee could not drive the car at all because "the transmission had gone clear out of it after I changed the oil and grease in the transmission. It wasn't heavy enough to hold." Appellee had a new transmission installed. He found the undercarriage had been burned where the car had been in a wreck. New rings were installed after appellee found that the car used four quarts of oil to every ten blocks.

The Buick had been at appellant's place of business from approximately a month to two or three months, and had been driven roughly by it. One of appellant's employees, Walter Brewer, drove it and pulled other automobiles with it. Brewer brought the car to a service station a day or two before the sale and told an attendant that the transmission was going out and he was going to put it on the lot and sell it, and he wanted heavy grease. Heavy grease, 140 weight, a truck grease, was put in it, instead of the normal weight of 90, so that it wouldn't growl so much.

The verdict in this case was general, and the judgment will not be disturbed for insufficiency of evidence if the evidence sustains either paragraph of the complaint. *Ohio Finance Co.* v. *Berry* (1941), 219 Ind. 94, 37 N. E. 2d 2; *Union Traction Co.* v. *Smith* (1921), 76 Ind. App. 487, 130 N. E. 813; *Anthoulis* v. *Patiniotis* (1940), 108 Ind. App. 130, 27 N. E. 2d 375.

Appellant urges that there were no implied war-

ranties as to freedom from defects. We do not consider this proposition, inasmuch as neither paragraph of the complaint is based upon an implied warranty.

Appellant next asserts that the written purchase order did not contain any express warranties, and precludes any assertion of representations as to the fitness of the automobile.

When a contract is reduced to writing, all oral negotiations between the parties which preceded or accompanied the execution thereof, in the absence of fraud or mistake, are regarded as merged in it, and it will be treated as the exclusive medium of ascertaining the contract between the parties. The general rule is that oral matters may not be shown if they contradict, add to or take from a written contract. *McCaskey Register Co.* v. *Curfman* (1910), 45 Ind. App. 297, 90 N. E. 323; *Diddel* v. *American Security Co.* (1932), 94 Ind. App. 639, 161 N. E. 689. Therefore, in the absence of fraud or mistake an express warranty cannot be shown by parole evidence, where the written contract is complete in all its parts. *King* v. *Edward Thompson Co.* (1914), 56 Ind. App. 274, 104 N. E. 106; *Michigan Pipe Co.* v. *Sullivan County Water Co.* (1920), 190 Ind. 14, 127 N. E. 768, 129 N. E. 5; *Conant et al.* v. *The National State Bank of Terre Haute et al.* (1889), 121 Ind. 323, 22 N. E. 250.

Where there is a charge that the written contract was procured by fraud, then such conversations as to extrinsic warranties and representations may be heard for the purpose of determining whether there was such fraud as invalidates the contract of sale or constitutes a cause of action for damages. *Paxton-Eckman Chem. Co.* v. *Mundell* (1916), 62 Ind. App. 45, 112 N. E. 546; *Tribune Co.* v. *Red Ball Transit Co.* (1926), 84 Ind. App. 666, 151 N. E. 338, 151 N. E.

836; *Citizens National Bank* v. *Kerney* (1915), 59 Ind. App. 96, 108 N. E. 139; *Marker* v. *Outcault Advertising Co.* (1919), 69 Ind. App. 344, 122 N. E. 32; 7 Blashfield, *Cyc. of Automobile Law and Practice*, § 4240.

In a case involving the sale of a stallion which had bone spavin, this court said, in *Martin* v. *Shoub* (1916), 62 Ind. App. 586, 113 N. E. 384:

> "If appellant made statements as to the horse's condition which he knew or should have known were false, and thus induced appellee to purchase him, relying on such statements, the effect of such fraud can not be overcome merely by a contract expressly omitting warranties. Because the fraud was so successful as to induce the buyer to take a contract without a warranty is all the more reason that there should be liability on the fraud."

The fact that the officer or agent of appellant who made the representations did not know of their falsity, does not bar appellee's recovery. As was said by our Supreme Court in *Kirkpatrick* v. *Reeves et al.* (1889), 121 Ind. 280, 22 N. E. 139:

> "An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose."

See also: *Williams* v. *Hume* (1925), 83 Ind. App. 608, 149 N. E. 355; *Wheatcraft* v. *Myers* (1914), 57 Ind. App. 371, 107 N. E. 81; *Romine* v. *Thayer* (1920), 74 Ind. App. 536, 128 N. E. 456; 7 Blashfield, *Cyc. of Automobile Law and Practice*, § 4232.

Appellant insists that the evidence shows that appellee purchased the automobile "as is"; that he knew it was defective in spite of the fact that the salesman

said it was not, or at least had ample reason to doubt the truth of the salesman's statement. In our opinion the jury was not required to accept this as the only reasonable conclusion inferable from the evidence.

The evidence was sufficient to sustain the verdict under the first paragraph of complaint, and the verdict is not contrary to law.

Appellant's only claim as to the damages being excessive is that appellee is not entitled to recover anything at all, and therefore any damages assessed are excessive. This contention is disposed of by our holding as to the other specifications of the motion for new trial.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 88 N. E. 2d 775.