GENERAL ELECTRIC COMPANY *v.* DORR ET AL.

[No. 20,350. Filed July 5, 1966. Rehearing denied August 25, 1966. Transfer denied March 1, 1967.]

*Robert D. Schuttler*, of Evansville, for appellant.

*Joseph B. Minor*, of Evansville, for appellees.

BIERLY, J.—This action was brought by plaintiffs-appellees, William B. Door and Rebecca J. Dorr, husband and wife, in the Vanderburgh Probate Court, against General Electric Company, defendant-appellant, alleging damages resulting from alleged defective heating pump installed in the home of of the plaintiffs.

The court granted a motion for a change of venue from the judge; then subsequently, when defendant filed a motion for a change of venue from the county, the cause was venued to the Posey Circuit Court.

The issues were joined on the plaintiffs' Third Amended Complaint in two paragraphs hereinafter designated as the complaint. The first paragraph was based on a breach of warranty; the second upon alleged fraud and misrepresentation. The defendant submitted four specifications as grounds for a demurrer to plaintiff's complaint which demurrer was overruled by the court. The defendant then filed an answer to plaintiffs' complaint, and also filed two additional specifications in support of its demurrer to Paragraph II of plaintiffs' complaint, there alleging in each specification that the complaint did not state facts sufficient to constitute a cause of action.

Upon the issues thus joined, the cause was tried by a jury. The jury returned a verdict in favor of the defendant on the first pleaded paragraph, and on the second pleaded paragraph the jury returned a verdict of $800.00 and costs in favor of plaintiffs. Defendant timely filed its motion for a new trial alleging as error the following:

"1. The Court erred in overruling defendant's First and Second ground of demur to Paragraph II of plaintiffs' third amended complaint.

"2. Error law occurring at the trial in this:

    a. The Court erred in giving to the Jury plaintiffs' instruction number six (6), of which instruction the defendant duly objected within the proper time, before argument, and after the Court had indicated the instruction would be given to the Jury.

    b. The Court erred in refusing to give to the Jury at the request of the defendant written instructions numbered eleven (11) and twelve (12) tendered and requested by the defendant to be given.

    c. The Court erred in overruling the defendant's motion, made at the close of all the evidence, to in-

struct the Jury to return a general verdict for the defendant.

"3. The verdict of the Jury is not sustained by sufficient evidence.

"4. The verdict of the Jury is contrary to law."

Appellants' sole Assignment of Errors is that:

"The court erred in overruling appellant's motion for a new trial."

Salient facts as shown by the record and evidence most favorable to appellee may be briefly stated as follows: Plaintiffs purchased a house and lot located at 711 South Meadow Road, Evansville, Indiana, in the early part of 1960, from Charles Bachman. The residence had been built five years previously. At the time of purchase it was equipped with a General Electric Weathertron, a complex mechanism which heated the house in winter and cooled it in summer. This unit was located in the basement of the house. The seller, Charles Bachman, delivered to plaintiffs the manuals explaining the operation of the unit; and, also The General Electric Company's Five Year Warranty. The unit was designated Weathertron (Type WT, Form C).

Appellees first experienced difficulty with the Weathertron in the mid-summer of 1960, due to the failure of the unit to operate properly. They were unable to correct the unit, and then contacted the U. S. Metal Company, which company had sold the Weathertron. The name of this company appeared on the back of the Warranty. When this company was contacted by appellees, they were informed that it was no longer a General Electric dealer, but suggested that appellees contact the Waelde Sheet Metal Company. This company informed the appellees that it was not a General Electric dealer, and that it had no servicemen qualified to repair such General Electric equipment.

Finally, appellees were advised to contact an area representative of the General Electric Company. This they did. The

unit was not working properly from July 1960, to October 1961. It neither heated the house properly in winter; nor, air conditioned it efficiently in the summer. Appellees in October 1961, contacted Bernard Kneer, a General Electric Representative, who brought with him Ray Temple, proprietor of the Temple Electric Company of Evansville, to confer with the appellees. On examining the unit, Bernard Kneer stated that the compressor had shorted out, and advised Ray Temple to wire around the compressor so that the supplemental heating mechanism would function adequately. Prior to contacting Bernard Kneer, appellees had contacted the Wesselman's Refrigeration Service. This company sent a serviceman who was unable to repair the unit.

Bernard Kneer informed appellees that he would check to see what could be done to repair the defective unit. Later a conference was held by appellees with Bernard Kneer and a service engineer employed by the General Electric Company at Louisville. These men told appellees that the installation of a complete new unit was necessary; that in their opinion the Five Year Warranty was no longer in effect as it had expired November 30, 1960; but stated that, if the warranty had been in force, its provisions would have been transferred to appellees as purchasers.

Bernard Kneer and Mr. Krisher informed appellees that although nothing was wrong with the unit except a faulty compressor, it would be necessary to install a new unit as required by "company policy" of the General Electric Company.

In answer to appellees contention that more than a year had elapsed since they first had attempted to secure a serviceman to repair the unit, and therefore, the warranty was in force and effect at the time the unit first became defective in July 1960, Bernard Kneer and Mr. Krisher stated, that the warranty was conditioned upon the company having a General Electric Dealer in Evansville, Indiana; and therefore, the

warranty was void. They stated that had the warranty been in force they would have honored its terms for the benefit of the appellees.

Appellees authorized Bernard Kneer and Mr. Krisher to order a new unit, but before the order could be placed, the General Electric Representative stated that it would be necessary for an authorized General Electric Dealership to be established. The Temple Electric Company was organized and proceeded to order and install the new unit at a cost of $1,300.00 to appellees.

In explaining as to why a compressor could not be replaced instead of requiring the purchase of an entirely new unit, the General Electric Representative stated that the unit was assembled at the factory as a complete unit, and therefore, the compressor could not be replaced in the field. Appellees paid for the unit on December 18, 1961. On or about December 27, 1961, the newly installed unit failed to function properly. Upon making a call to the Temple Electric Company, Mr. Temple came, examined the unit, and concluded that the compressor had "shorted out" as the other compressor had previously done. Temple again wired around the compressor for temporary service, and ordered a new unit as replacement. When a replacement was delivered it proved to be only a compressor which the Temple Electric Company installed in place of the faulty compressor.

The General Electric Company charged the Temple Electric Company $300.00 for the compressor, which sum was not charged against appellees because the General Electric Company had executed a warranty for the replacement at the time of its sale to appellees. The General Electric Company offered no explanation as to why a faulty compressor was not replaced in the old unit as it had been in the new unit.

Appellant waived point 2(b) alleged in its motion for a new trial, therefore, it will be disregarded. In point (1) of the motion for new trial defendant asserts error by the trial

court in overruling defendant's first and second grounds of demurrer to Paragraph II of plaintiffs' complaint.

The crux of this demurrer deals with rhetorical paragraphs 6, 7 and 8 of the second paragraph, of the amended complaint, which are as follows:

"6. The defendant then advised plaintiffs that a new compressor could be installed thus eliminating the necessity of a new Weathertron at a cost of approximately $200.00.

"7. That defendant misinformed and misled plaintiffs into believing that a new Weathertron had to be installed with the exception of cabinet and blowers when in fact a new compressor could have been installed in said unit and at said time defendant knew or should have known that a new compressor could have been installed in said unit.

"8. That defendant fraudently misrepresented to plaintiffs that they would have to purchase a new Weathertron with the exception of cabinet and blowers when in fact it was only necessary to purchase a compressor, all of which defendant knew or should have known."

In substance this is based upon fraudulent misrepresentation. Appellant charges that the court's ruling permitted plaintiffs to proceed to trial on the theory of fraud and misrepresentation without requiring the plaintiffs to disclose to the defendant the facts constituting fraud and misrepresentation. Appellant cites the case of *Automobile Underwriters, Inc.* v. *Smith* (1961) 131 Ind. App. 454, 167 N. E. 2d 482, concerning the sufficiency of a complaint based on fraud or misrepresentation. In pertinent parts the opinion in this case reads as follows:

"The elements necessary to state a cause of action for fraud are representations of material facts and reliance thereon, falsity, scienter, deception and injury." (Citing cases.)

We are of the opinion that rhetorical paragraphs 7 and 8, of the second paragraph of the complaint pleaded facts sufficient

to the court's ruling, in that the defendant misinformed and misled appellee into believing that a new complete Weathertron unit must be installed, and that the faulty compressor could not be replaced in the old unit, when in fact it was possible for defendant to have replaced such faulty compressor; that defendant fraudulently represented to appellees that it was imperative that they purchase the entire unit, or Weathertron, when appellant knew, or should have known, it was only necessary to purchase a new compressor.

We are of the opinion that the facts alleged in said rhetorical paragraphs 6, 7 and 8, of the complaint are sustained by the submission of evidence of probative value.

Evidence submitted during the trial reveals that had there been a compressor only installed in the original unit there would have been a saving to appellees in the sum of approximately $1,300.00. In our opinion this unwarranted extra charge to appellees was caused by misrepresentation of the facts by appellant.

The *Automobile Underwriters, Inc., supra,* and the *Farm Bureau Mutual Ins. Co.* v. *Seal, Admr.* (1963) 134 Ind. App. 269, 179 N. E. 2d 760, hold that it is only necessary to allege that the defendant knew said representations were false at the time made, that the plaintiffs were deceived by the misrepresentations, and that plaintiffs suffered injuries.

These elements have been pleaded in the second paragraph of plaintiffs' complaint, and we conclude that plaintiffs' complaint was sufficient to withstand an attack by way of a demurrer.

On point number 2, of the motion for a new trial, the appellant charged error of law occurring during the trial, and under sub-section "a" of said point 2, appellant charged error by the court in giving to the jury plaintiffs' Instruction Number 6, in which the court specified the elements of proof essential to establish fraud and misrepresentation.

Said Instruction No. 6 is as follows:

## INSTRUCTION NO. 6

"If you should find from a fair preponderance of the evidence that it was not necessary to install a new Weathertron unit at the time the defendant's agents represented to the plaintiff, William B. Dorr, that a new unit was required, when in fact it was only necessary to replace the compressor on said Weathetron, and if you should further find that the defendant knew or should have known this, then this would be a misrepresentation and fraud on the part of the defendant and the plaintiffs would be entitled to recovery on Paragraph II of their complaint for the damages they sustained, if any, as a result of said misrepresentation and fraud on the part of said defendant, General Electric Company."

The appellants' objection to the giving of this instruction is as follows:

"In open Court and out of the presence of the Jury, the Defendant objects to the Court giving the Plaintiffs' Instruction No. 6 for the reason that this Instruction informs the Jury that if the defendant knew or should have known that it was not necessary to replace the entire unit, but only to replace the compressor, that this would then be a misrepresentation and fraud on the part of the defendant.

"This Instruction is erroneous in that in and to establish fraud and misrepresentation, it is necessary the defendant have guilty knowledge of the falsity of the statements and that it makes it for the purpose of deceiving Plaintiffs and that they are made with the expectation and hope that the Plaintiffs will act upon said misrepresentations."

It is asserted by the appellant that the jury was misled and confused by Instructions No. 6 and No. 10, as to the controlling law in the case. Specifically, appellant charges that even if Instruction No. 10 appears to adequately cover the essential points of fraud and misrepresentation, its effect is nullified by the liberal and misleading pronouncement alleged in appellees' Instruction No. 6. Appellant cited a recent case decided by the Supreme Court entitled *Harper* v. *James* (1965), 246 Ind. 131, 203 N. E. 2d 531, at Page 534, which reads as follows:

"As stated in *Fowler* v. *Wallace* (1892), 131 Ind. 347, 355-356, 31 N. E. 53, 55:

". . . It is an elementary principle of procedure that the court cannot by contradictory instructions leave to the jury the duty of determining which of the two lines of instructions shall be followed, or what rule of law shall control the case. The law must come from the court, and be so declared that the jury can follow it without confusion.

■ It appears that the appellant fails to point out the conflict in said instructions, therefore, the cases cited above are inapplicable to the point at issue.

■ Appellant also charges that appellees' Instruction No. 6 is a mandatory instruction. It appears that appellant failed to raise this objection to this instruction at the proper time, therefore, the objection was not timely made and is unavailable on appeal. *Lakes* v. *Moore* (1965), 137 Ind. App. 681, 207 N. E. 2d 846.

■ Appellant in point 3 of its motion for a new trial claims that the material allegation of appellees' Paragraph II of the complaint is not sustained by sufficient evidence. As a consequence thereof appellant contends that the court should have directed a verdict in its favor at the close of all the evidence. This the court could not do, inasmuch as there was conflicting evidence introduced especially relative to the installation of the replacement units and/or compressors. Appellant's brief contains the following statement:

"The fraud and misrepresentation allegedly committed by the defendant seems to be based on the replacement in November, 1961 of the compressor in the original installation,"

which statement provoked this reply by appellees as shown in their reply brief, to-wit:

"This is not a true statement of the facts because on November 9, 1961 a new Weathertron unit was installed in appellees' home and not a compressor as appellant states."

It is a well settled principle that on appeal only the evidence most favorable to appellees, and all reasonable and logical inferences that may be drawn therefrom may be considered by this court. *Badgley* v. *State; Brown* v. *State* (1949) 226 Ind. 665, 668, 82 N. E. 2d 841.

The evidence most favorable to appellees reveals the following:

The Weathertron first failed to operate properly in July, 1960. Appellees made repeated attempts to contact the General Electric Company through its authorized dealers to obtain a competent serviceman or repairman capable of repairing the Weathertron. Finally appellees contacted Bernard Kneer, an Area General Electric Representative, who took a Mr. Temple of the Temple Electric Company with him to appellees home to examine the unit. Discovering that the compressor in the unit had "shorted" Mr. Temple was asked by Mr. Kneer to wire around the compressor so that temporary service would be available.

After Mr. Kneer asserted that the warranty had expired on the original unit on November 30, 1960, appellees consented that a new unit should be purchased. This was done, and the installation was made by the Temple Electric Company, at a total cost of $1,300.00, which was paid by the appellees on December 18, 1961.

Appellant furnished the purchaser of the original unit with a 5-Year Replacement Agreement, marked Exhibit "A", wherein it agreed with the purchaser of a new General Electric Weathertron (Type WT-Form C),

". . . to repair or replace * * * the refrigerant system or any part thereof, free of charge at any time during the five years following date of original installation . . ."

and

"Any defect in said product should be brought to the attention of the General Electric retailer from whom it was purchased, who will be authorized to furnish or arrange for repair or replacement within terms of this warranty and replacement agreement."

Then appellees in July, 1960, contacted the U. S. Metal Company, whose name appeared on the warranty, to secure the services of a repairman. This company stated it was no longer a General Electric Dealer, but recommended other General Electric Dealers, who, upon investigation, were not handling the Weathertron, and had no serviceman employed who was trained to repair this unit. Hence, appellees contended that they had every right to expect the General Electric Company to honor the warranty which was admitted to be in effect during the period from July, 1960 to November 30, 1960.

In the condensed recital of the evidence, appellee, William B. Dorr, testified as follows:

"Mr. Kneer and Mr. Krisher and I had quite a long discussion about the warranty. I tried for over a year to get G. E. service people out to look after this thing and they had no representative in Evansville. They told me that their position in this thing was limited to trying to establish a dealer in Evansville or any particular area and failing to do so that they had no further obligation."

We are of the opinion that from this evidence the jury could draw reasonable inferences and reasonable men could form conclusions to the effect that appellant was relying on minor limitations imposed in the contract of warranty, and using the lack of an Evansville Area General Electric Dealership as a subterfuge to escape a major liability set forth and controlling in the warranty.

In the determination of an appeal this court is bound by the Rules of the Supreme Court, by statutes and by case law. In *Riehl et al.* v. *The Evansville Foundry Association* (1885) 104 Ind. 70, 3 N. E. 633, we quote this statement:

"It has been held in a great number of cases, that this court can not, and will not, weigh the evidence, but will accept that taken by the trial court as trustworthy." See: *Union School Township* v. *First National Bank of Crawfordsville* (1885) 102 Ind. 464, 2 N. E. 194.

In *The Indianapolis and St. Louis Railroad Co.* v. *Stout, Administrator* (1876) 53 Ind. 143, 147, the court said:

"It is the duty of the Supreme Court to indulge every reasonable presumption in favor of the correctness of the general verdict, which is presumed to have been rendered upon the substantial merits of the matters in controversy."

We think there was sufficient evidence of probative value submitted to the jury in the case at bar from which the jury could draw reasonable inferences to sustain its verdict in favor of appellees upon the allegations set forth in appellees' Paragraph II of the Third Amended Complaint.

It has been well said in the case of *Armstrong Cork Co.* v. *Maar* (1953) 124 Ind. App. 105, 111 N. E. 2d 82, as follows:

"There was evidence of probative value which went to the jury * * * and from which evidence the jury could draw reasonable inferences, and, even if the evidence be considered such that reasonable men could form different conclusions therefrom, yet, it is neither our prerogative nor privilege to substitute our judgment for that of the jury."

Thus, when the sufficiency of the evidence is in question, as in the case at bar, this court will not weigh the evidence, but we may search the record when the case is affirmed, to ascertain if there is any evidence of probative value in the record, or any legal inferences which may be deduced therefrom, which, if believed by the court or jury, would sustain the verdict.

We are of the opinion in the case at bar, that the evidence presented most favorable to the appellees sustains the verdict of the jury and that said verdict and judgment entered thereon by the court are not contrary to law.

We find no reversible error, and the judgment is hereby affirmed.

Judgment affirmed.

Smith, C. J., and Mote J., concur.

Hunter, J., concurs in result only.

ON PETITION FOR REHEARING

BIERLY, J.—Appellant, in its Petition for Rehearing, alleges that this court erred in summarizing the facts, to-wit:

"Bernard Kneer and Mr. Krisher informed appellees that although nothing was wrong with the unit except a faulty compressor, it would be necessary to install a new unit as required by 'company policy' of the General Electric Company."

Appellant contends that the above statement is not based upon the record. Upon a re-examination of this case, and particularly the transcript, we have found many passages of testimony which supports our summary; particularly, on the direct examination of William Dorr, wherein the following question and answer is quoted from the transcript:

"Q. Did Mr. Kn*ear* or Mr. Krisher ever explain to you why that compressor couldn't be fixed instead of buying the whole new unit?

"A. Yes, they said it was all assembled at the factory as a complete unit and was not suitable for field replacement. The compressor could not be replaced in the field."

Also, on the direct examination of Bernard Kneer for the defendant, the following questions and answers were given:

"Q 16 I want you to get to the conversation between Mr. Krisher, yourself and Mr. Dorr.

"A We told Mr. Dorr if the machine was out of warranty and the information we had had was that he was not the original purchaser of the equipment it stated in our warranty, it was General Electric Company policy that he would have to buy a new unit and we give him an estimate on the price and I think it was around Thirteen-hundred dollars.

"Q 17 Had you ever installed or serviced that type of equipment?

"A    Yes.

"Q 18 Are you familiar with the company policy?

"A    Yes.

"Q 20 What was the company policy? That is with respect to replacing?

"A    The company policy was to follow the warranty as printed as we had in evidence here; that we warrant the purchaser of each new—

"Q 21 What was company policy with respect to replacing the unit, if defective?

"A    If defective and in warranty it was replaced.

"Q 22 If it was out of warranty what was the policy?

"A    At that date, in 1961, we replaced the whole unit. We call it refigeration cycle.

"Q 23 What units compose the whole unit?

"A    The cycle which is replaced is the compressor, the evaporator coil, the condensor coil and part of the wiring circuit.

"Q 23 In other words, if something went wrong with the condensor you replaced all of that?
Yes at that date.

"Q 24 Was there any reason for that?

"A    The reason was that in a factory assembled unit is more effecient than a field unit."

We are of the opinion that these passages justify our summary of the facts.

Appellant's second contention in its petition for rehearing is based upon our consideration of Instruction No. 6. Instruction No. 6, was the plaintiffs' instruction which was given, over objections by appellant, to the jury. This instruction and appellant's objections thereto are set out below:

### INSTRUCTION NO. 6

"If you should find from a fair preponderance of the evidence that it was not necessary to install a new Weathertron

unit at the time the defendant's agents represented to the plaintiff William B. Dorr, that a new unit was required, when in fact it was only necessary to replace the compressor on said Weathertron, and if you should further find that the defendant knew or should have known this, then this would be a misrepresentation and fraud on the part of the defendant and the plaintiffs would be entitled to recovery on Paragraph II of their complaint for the damages they sustained, if any, as a result of said misrepresentation and fraud on the part of said defendant, General Electric Company."

The appellants' objection to the giving of this instruction is as follows:

"In open Court and out of the presence of the Jury, the Defendant objects to the Court giving the Plaintiffs' Instruction No. 6 for the reason that this Instruction informs the Jury that if the defendant knew or should have known that it was not necessary to replace the entire unit, but only to replace the compressor, that this would then be a misrepresentation and fraud on the part of the defendant.

"This Instruction is erroneous in that in and to establish fraud and misrepresentation, it is necessary the defendant have guilty knowledge of the falsity of the statements and that it makes it for the purpose of deceiving Plaintiffs and that they are made with the expectation and hope that the Plaintiffs will act upon said misrepresentations."

In order to avoid any misinterpretation and misunderstanding of the law as it is applied to this case, and cases of a similar nature which will arise in the future, it is the court's obligation to clarify our original opinion in light of appellant's Petition for Rehearing.

The appellant contends that Instruction No. 6, set out above, is erroneous and in direct conflict with appellant's Instruction No. 10, which reads as follows:

"Fraud is not presumed, and to warrant a recovery for fraud or deceit it must be averred and proved. To make a complaint good for general damages resulting from a fraudulent representation of a given fact, it must, in substance, be averred and proven (1) that defendant made a material

representation as to an existing fact; (2) that it was false; (3) that he made it, knowing it to be false, or made it recklessly, without knowledge of its truth and as a positive assertion of a fact; (4) that it was made to induce plaintiff to act on it; (5) that plaintiff relied on it and acted thereon; (6) that by so doing he suffered an injury for which a recovery is sought. Unless the plaintiff has established by a preponderance of the evidence, all of the above conditions, he cannot recover on Paragraph II of their complaint and your verdict must be for the defendant on the Plaintiff's Second Paragraph of Complaint."

As a result of this alleged conflict, appellant charges that the jury was misled and confused as to the proper law in the case to follow.

We are of the opinion that Instruction No. 6 is not an erroneous instruction, and thus does not conflict with Instruction No. 10.

In the case of *Clarke Auto Co.* v. *Reynolds* (1949) 119 Ind. App. 586, 88 N. E. 2d 775, we find the statements of law supporting our position, as well as citations supporting those statements. Beginning on Page 592, of the above cited case, we quote with approval the following:

"In a case involving the sale of a stallion which had bone spavin, this court said, in *Martin* v. *Shoub* (1916) 62 Ind. App. 586, 113 N. E. 386:

'If appellant made statements as to the horse's condition *which he knew or should have known were false,* and thus induced appellee to purchase him, relying on such statements, the effect of such fraud can not be overcome merely by a contract expressly omitting warranties. Because the fraud was so successful as to induce the buyer to take a contract without a warranty is all the more reason that there should be liability on the fraud.'

"The fact that the officer or agent of appellant who made the representations did not know of their falsity, does not bar appellee's recovery. As was said by our Supreme Court in *Kirkpatrick* v. *Reeves et al.* (1889) 121 Ind. 280, 22 N. E. 139:

'An unqualified statement that a fact exists, made for the purpose of inducing another to act upon it, implies that

the person who makes it knows it to exist, and speaks from his own knowledge. If the fact does not exist, and the defendant states of his own knowledge that it does, and induces another to act upon his statement, the law will impute to him a fraudulent purpose.'

"See also: *Williams* v. *Hume* (1925) 83 Ind. App. 608, 149 N. E. 355; *Wheatcraft* v. *Myers* (1914) 57 Ind. App. 371, 107 N. E. 81; *Romine* v. *Thayer* (1920), 74 Ind. App. 536, 128 N. E. 456; 7 Blashfield, *Cyc. of Automobile Law and Practice,* § 4232."

In light of the foregoing authority, we find no error in regard to appellant's contention that instruction No. 6 was erroneous thereby requiring a reversal.

We are of the opinion that the remainder of appellant's Petition for Rehearing presents no questions which were not covered in our original opinion.

For the foregoing reasons we are of the opinion that the Petition for Rehearing should be denied.

Petition for Rehearing Denied.

NOTE.—Reported in 218 N. E. 2d 158. Rehearing denied reported in 219 N. E. 2d 206.