## WHEATCRAFT *v.* MYERS.

[No. 8,438. Filed December 17, 1914.]

1. APPEAL.—*Verdict.*—*Conclusiveness.*—The trial court has some discretion to overrule a verdict because it is contrary to the weight of the evidence, but the court on appeal can only determine if there is sufficient evidence to support the verdict, and is not permitted to weigh it. p. 374.

2. FRAUD.—*Fraudulent Representations.*—*Evidence.*—*Sufficiency.*— In an action for fraudulent representations as to certain hogs sold at public sale, evidence that defendant represented the hogs to be sound and all right, together with evidence showing that many of the hogs showed signs of sickness on the day of sale and died of cholera so soon after being removed by the purchasers as to give rise to the conclusion that they were infected with cholera the day of the sale, and showing that plaintiff purchased relying upon the positive representations of defendant, was sufficient, in view of all the facts and circumstances shown, to sustain the verdict for plaintiff as against the contention that fraud had not been proved, although such verdict was against the weight of the evidence. p. 375.

3. FRAUD.—*Actionable Fraud.*—*What Constitutes.*—It is not always essential in proving fraud to show that a party making false representations knew that they were false when made, but it is sufficient if it is shown that he made the representations as being true of his own knowledge, in the nature of warranties of material facts, about which actual knowledge was obtainable in the exercise of reasonable care, and not as a mere expression of opinion or belief, and that such representations were in fact false. p. 377.

4. FRAUD. — *Punitive Damages.* — *Fraudulent Representations.* — Where representations, which were in fact false, were made with such disregard of facts ascertainable in the use of due care as

to amount to fraudulent intent in law, punitive damages could be assessed, though actual intent to deceive was not shown. p. 377.

5. APPEAL.—Review.—Instructions.—In an action for fraudulent representations inducing a purchase of hogs infected with cholera, instructions withdrawing from the jury evidence that other hogs not sold by defendant became sick shortly after being with or in close proximity to hogs sold by defendant at the same time plaintiff purchased the hogs involved, and defining the measure of damages if the jury found for plaintiff upon a paragraph of complaint declaring for hogs infected by those purchased from defendant, were not confusing, in view of all the instructions given. p. 378.

6. FRAUD.—Fraudulent Representations.—Damages.—In an action for fraudulent representations inducing a purchase of hogs infected with cholera, and to recover for the loss of other hogs infected by coming in close proximity to the hogs purchased, where the amount paid for the hogs purchased was $107.80, and the value of the other hogs was $85, a verdict awarding $120 was not excessive, especially in view of the fact that punitive damages were authorized. p. 378.

7. EVIDENCE.—Value.—Relevancy.—Loss of Personal Property.— Evidence of plaintiff as to the value of hogs lost because of cholera infection was not objectionable because the questions propounded to him did not specifically mention the time and place of the value, where the answers could only be understood as meaning the value at the time and place that they became sick. p. 379.

8. EVIDENCE.—Opinion Evidence.—Competency of Witnesses.—A witness need not be an expert in order to express an opinion about matters with which he is familiar; hence witnesses shown to have been farmers of long experience in raising hogs, and to be familiar with the symptoms of cholera, were sufficiently qualified to state that in their opinion certain hogs were afflicted with cholera, and the fact that they were not veterinary surgeons would go only to the weight of their evidence. p. 379.

9. EVIDENCE.—Opinion Evidence.—Hypothetical Questions.—A hypothetical question may include facts of which there is some evidence, or which may fairly be inferred from the evidence. p. 379.

10. FRAUD.—Fraudulent Representations.—Evidence.—Admissibility.—In an action for fraudulent representations inducing a purchase of hogs at a public sale, evidence that defendant did not demand payment from, or sue, another purchaser of hogs at such sale who refused to take them away because they would not eat, was admissible, though of slight probative value. p. 379.

11. FRAUD.—*Fraudulent Representations.—Evidence.—Admissibility.*—In an action for fraudulent representations inducing the purchase of hogs infected with cholera, the admission of the testimony of a witness that he had seen two dead hogs on defendant's farm about two months before the sale was not erroneous. p. 380.

12. APPEAL.—*Review.—Harmless Error.—Admission of Evidence.*—In an action for fraudulent representations inducing a purchase of hogs infected with cholera, the erroneous admission of evidence as to hogs purchased by third persons was harmless, where there was proper evidence to support the verdict and the damages awarded were well within such proper evidence, and the court had instructed the jury that such erroneous evidence was not to be considered. p. 380.

13. FRAUD.—*Fraudulent Representations.—Evidence.—Admissibility.*—In an action for fraudulent representations inducing a purchase at public sale of hogs infected with cholera, sufficient similarity of conditions was shown to warrant the admission of evidence that hogs bought by several witnesses became sick and died shortly after being removed from defendant's farm, where it appeared that the purchases were made on the same farm at the same sale, and that the hogs were at the time of the sale penned near together, and became sick so soon after the sale as to indicate that they were infected at the time of the sale. p. 380.

From Bartholomew Circuit Court; *Hugh L. Wickens,* Judge.

Action by Noble Myers against Harvey H. Wheatcraft. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*E. A. McAlpin. Charles S. Baker* and *Frank N. Richman,* for appellant.

*Brown & Brown, Miller & Barnett* and *John Rynerson,* for appellee.

IBACH, J.—This action was for damages occasioned by reason of false and fraudulent representations made by appellant at a public sale of livestock on November 10, 1910, at his farm in Johnson County. Appellee charged in his amended complaint of two paragraphs that twenty-two hogs bought by him for $107.80 at this sale were afflicted with

cholera from which they and twenty-one other hogs with which they were put died, that appellant at the time of the sale knew the hogs had cholera and falsely and fraudulently represented to appellee that they were sound, upon which representation appellee relied, not knowing it to be false. In the first paragraph it is alleged that the twenty-two hogs if as represented would have been worth $187.50, and that amount in damages is asked. In the second it is averred that the twenty-one hogs were worth $125, and that appellee's farm was damaged by infection $500, the demand being for $1,000. The cause was tried by a jury, upon the issues formed by answers of general denial to each paragraph of complaint, and a verdict was returned for appellee for $120, upon which judgment was rendered. The only error assigned is in overruling appellant's motion for new trial.

It is first asserted that the verdict is not sustained by sufficient evidence, and is contrary to law, for the reasons that fraud is never presumed, but must be clearly proved, and that the evidence does not show that the hogs sold to appellee, at the time of the sale, or thereafter, had cholera, or that if they had cholera, appellant either knew it at the time of the sale, or recklessly stated as a fact that they did not have cholera, when examination would have shown that they did, that the evidence rather shows that by examination he could not have determined that his hogs had cholera on the day of the sale.

We may as well state at the outset, that were we permitted to weigh the evidence, we would have to find that the evidence weighs strongly in appellant's favor,
1. upon some points essential to appellee's case. But, although a trial court has some discretion to overrule a verdict because it is contrary to the weight of the evidence (*Cincinnati, etc., R. Co.* v. *Madden* [1893], 134 Ind. 462, 34 N. E. 227), an appellate tribunal in this State is not permitted to do so, and the only question for us is, whether,

laying aside all evidence except that which tends to support the verdict, such evidence is sufficient to let the verdict stand.

There is evidence to the effect that appellant on the day of the sale represented the hogs to be sound and all right, fit to go into any man's herd, there is evidence that 2. the hogs purchased by appellee were sick the next morning after he removed them to his farm, and all died shortly after with the cholera, also that the hogs which he already had on his farm died with the cholera after coming in contact with these hogs. There is evidence that other hogs purchased by other persons at the sale died with the cholera shortly afterwards, and one witness testified that the morning after the sale, the hogs which he bought refused to eat and looked sick, so he refused to take them from appellant's premises, and another witness saw a dead sucking pig on the premises the day after the sale. The weak point in the evidence is, as to whether it was shown that appellant had knowledge that the hogs sold were sick on the day of the sale, or could have had such knowledge in the exercise of reasonable care. It was shown that there were two dead hogs on appellant's farm in September, but appellant states that one of these was killed by being run over by a wagon, the other got caught in a barn door. One witness saw hogs at threshing time in August on the farm, which looked sick to him, like they had cholera, but appellant and all the other witnesses having knowledge of his farm, deny this, and there is no showing that if the hogs were sick then he had any knowledge of it. Further, this was so remote a time from the day of the sale, that it would have little bearing upon his knowledge that day. Appellant testifies, and there is no direct evidence to contradict him, that he knew of no signs of sickness among his hogs the day of the sale, or prior thereto, and saw nothing to indicate that they were not sound. There is, however, the evidence of one witness that some of the hogs on the day of the sale were lying piled up

together, and did not want to get up, of another that they looked sick to him, and therefore he did not buy any, of another that there was a sick sow the day of the sale, and of appellee that he saw two small pigs vomit, one of which he afterward bought. This evidence of appellee himself is all the evidence which even tends to show any sickness on the day of the sale in the hogs which he bought. Appellant states that the sow which one witness said was sick the day of the sale was merely crippled, that this sow and the hogs which the one witness refused the morning after the sale, because they would not eat, never became sick, and some were sold at the stockyards, and some of them were still on his farm at the time of the trial, that none of the hogs remaining on his place died, that he had never had cholera on the place, that the sucking pig which was dead the day after the sale had been mashed by the sow lying on it, and it was in evidence that hogs often vomited because they had been overfed, and this was not a special sign of sickness. There are but two or three of many witnesses for appellee (half a dozen or more of whose witnesses have suits pending against appellant similar to that of appellee) who testified to any signs of sickness among the hogs the day of the sale, and some of these did not see signs of sickness until after appellant had made the representation which is the foundation of this suit. We may again state that the verdict is, upon the question of appellant's knowledge of sickness of the hogs on the day of the sale, very much against the weight of the evidence. However, there is no doubt that many hogs bought at that sale became sick and died shortly after their removal to the farms of appellee and other witnesses, so soon thereafter that the jury could scarcely fail to conclude that they were infected with cholera the day of the sale. There is, as we have seen, some evidence that the hogs showed signs of sickness that day, and evidence to show that appellee purchased the hogs sold to him relying upon the positive statement of appellant as

to their condition, so that the statements made by appellant in view of all the facts and circumstances shown by the evidence, and the facilities which he had for ascertaining their truth, must have been considered by the jury to have the force of actual fraud, whether the falsity of the statements were known to him or not. What constitutes fraud

3. in such a case has been considered often by the courts generally, but the conclusions reached have not always been identical. But the rule in this State seems to be that it is not always necessary to prove that the party charged with making the false representations knew that they were false when so made. If he makes such representations as being true of his own knowledge and not as a mere expression of his opinion or belief, but rather in the nature of warranties concerning material facts, about which actual knowledge might be obtained with the exercise of reasonable care, and the representations are in fact false as made, such conduct on his part will be deemed fraudulent and he will have to respond in damages to one who has relied upon the superior knowledge assumed by him, and has been damaged thereby. This is upon the principle that a party who states a thing to be true or that certain conditions exist, when he does not know the truth of such statements, and such facts are susceptible of knowledge is guilty of a fraud, and his belief in the existence of the thing as represented will not excuse the statement of actual knowledge. *Kirkpatrick* v. *Reeves* (1889), 121 Ind. 280, 22 N. E. 139; *New* v. *Jackson* (1912), 50 Ind. App. 120, 95 N. E. 328; *Furnas* v. *Friday* (1885), 102 Ind. 129, 1 N. E. 296; *Roller* v. *Blair* (1884), 96 Ind. 203; *Bethell* v. *Bethell* (1884), 92 Ind. 318; *Frenzel* v. *Miller* (1871), 37 Ind. 1, 10 Am. Rep. 62.

The court did not err in instructing the jury that it might, if it found the averments of the complaint

4. true, assess exemplary or punitive damages against appellant in addition to compensatory damages. The

general rule is that where malice, fraud, oppression, etc.,
enter into a tort, exemplary damages may be assessed.
13 Cyc. 105. It is also a rule that such damages can not
be assessed where there was an absence of intentional malice,
and the act which is the tort was done in good faith. But
we have held the evidence sufficient to show fraud, and
though an actual intent to deceive is not shown, yet where
such a disregard of facts ascertainable by the use of due
care is shown that it amounts to fraudulent intent in law,
punitive damages may be assessed. See *Harness* v. *Steele*
(1902), 159 Ind. 286, 64 N. E. 875; *Hobbs* v. *Smith* (1911),
27 Okl. 830, 115 Pac. 347, 34 L. R. A. (N. S.) 697.

We do not think any confusion resulted from the giving
of instruction No. 14 in which the court withdrew from the
jury evidence "tending to show that certain other
hogs, not sold by defendant, became sick shortly after
being with or in close proximity to hogs sold by de-
fendant, at the same time plaintiff purchased the hogs in-
volved in this suit", and instruction No. 17 in which the
jury was told the measure of damages if it found for
plaintiff on his second paragraph of complaint. This para-
graph declared for hogs infected by those bought from
appellant by appellee. Instruction No. 14, when taken in
connection with all the others given, was not intended to
refer to evidence of sickness of hogs owned by appellee and
not purchased at the sale, but to evidence of sickness of
hogs of persons other than appellee and not purchased at
the sale. Its purpose was to withdraw from the jury con-
sideration of the sickness of hogs owned by persons other
than appellee, which became sick after coming in proximity
to hogs bought by those persons at the sale.

The damages are not excessive. The amount appellee
paid for the hogs bought from appellant was $107.80. He
testified that the other hogs which died, for the value
of which he sued in his second paragraph of com-
plaint, was $85. The jury was authorized to assess

punitive damages, so that the verdict is well within the damages proven.

It is true that the value of personal property is relative, varying with time, place and circumstances. But although questions to appellee asking the value of the hogs 7. for which he claimed damages in his second paragraph of complaint did not specifically mention the time and place of that value, the answers could only be understood as meaning the value at the time and place that they took sick, so that this evidence was unobjectionable.

The witnesses Sutton and Green were sufficiently qualified to state that in their opinions certain hogs, which they bought from appellant at the sale, and which afterwards became 8. sick, had the cholera, since it was shown that they were farmers of long experience in raising hogs, and were familiar with the symptoms of cholera. A witness need not be an expert in order to express an opinion about matters with which he is familiar. The fact that these witnesses were not veterinary surgeons would go to the weight of the evidence and not to its admissibility. O'Toole v. Tudor (1911), 175 Ind. 227, 93 N. E. 276.

A hypothetical question may include facts of which there is some evidence, or which may fairly be inferred from the evidence, and judged by this standard, the ques- 9. tions to experts complained of by appellant were not improper. Taylor v. Taylor (1910), 174 Ind. 670, 93 N. E. 9.

That appellant did not demand payment or sue witness Gober for the price of hogs which Gober bought at the sale but refused to take the next morning because they 10. would not eat, are circumstances admissible in evidence, though in our opinion of very little probative value, yet they might be considered by the jury as having a slight tendency to show that appellant failed to demand the money because he knew the hogs were sick.

There was no error in permitting witness Parks to testify

that he saw two dead hogs on appellant's farm in September, since it appeared that this was the farm where 11. the sale took place, and where the hogs sold were raised, and another witness had testified to seeing sick hogs in August on the farm.

The evidence of certain witnesses as to the sickness and death of hogs owned by them and not bought at appellant's sale was withdrawn from the jury by instruction 12. No. 14, *supra*, on the ground that the cause of such illness was not shown. There may have been error in admitting such evidence, but considering that there was abundance of proper evidence to support the verdict in regard to the sickness of appellee's hogs, that the damages allowed were well within the proper evidence, and that such evidence was withdrawn from the jury by the court, we think the error in its admission, if any, was harmless. *Wea Tp.* v. *Cloyd* (1910), 46 Ind. App. 49, 91 N. E. 959.

13. There was evidence that hogs bought at the sale by several witnesses became sick and died shortly after removal to their farms, in one instance becoming sick during transportation from the sale. Objection was made to the admission of this testimony, that sufficient similarity in conditions to those under which appellee's hogs took sick and died is not shown, and it is not shown that they were not elsewhere infected after the sale. We think that sufficient similarity of conditions was shown, when it appeared that the hogs were purchased on the same farm at the same sale, and were at the time of the sale penned near together, and that they became sick so shortly after as to make the probability great that they were infected at the time of the sale, especially since it appears that a large proportion of the hogs sold at the sale shortly afterwards became sick, for there is an element of strength in this circumstance which favors the admission of the testimony as to sickness of hogs bought at the sale, with no greater similarity of conditions shown than above detailed. If there were only

one or two instances of hogs aside from appellee's becoming sick, it might be that in such a case more particularity in showing similarity of conditions should be required, but here the very number of instances of sickness of hogs bought at the sale immediately following their removal was a circumstance favoring the admission of such testimony, even though it was not shown that there was no possibility of infection from other sources after the sale. Neither did the court err in refusing to strike out the evidence of the witness Green as to the death by cholera of one of his hogs bought at the sale, for sufficiently similar conditions were there shown, even though it was shown that some conditions were dissimilar, and that there might have been a possibility of infection from other sources.

We find no cause for reversing the judgment. Judgment affirmed.

NOTE.—Reported in 107 N. E. 81. As to actions for recovery for false representations, see 18 Am. St. 555. As to damages recoverable for fraud and deceit in selling diseased animals, see 34 L. R. A. (N. S.) 697. See, also, under (1) 3 Cyc. 351; (2) 20 Cyc. 122; (3) 20 Cyc. 27; (4) 20 Cyc. 142; (5) 20 Cyc. 127; 38 Cyc. 1602; (6) 20 Cyc. 139; (7) 20 Cyc. 144; 16 Cyc. 1112; (8) 17 Cyc. 66; (9) 17 Cyc. 244; (10) 20 Cyc. 118; (11) 20 Cyc. 115; (12) 38 Cyc. 1444; (13) 17 Cyc. 288.