MURPHY AUTO SALES, INC., ET AL. *v.* COOMER, ET AL.

[No. 18,363. Filed June 3, 1953. Rehearing denied July 28, 1953. Transfer denied October 2, 1953.]

710

*Emerson J. Brunner,* of Shelbyville, and *Edward M. Slocum* (of counsel) of Indianapolis, for appellants.

*Samuel J. Kagan, H. Harold Soshnick* and *John M. Heeter,* all of Indianapolis, for appellees.

BOWEN, J.—This is an appeal from a judgment in an action by Overton Coomer, a minor, by his next friend, and his mother Alma Coomer, as plaintiffs, to recover damages on an amended complaint for rescission of a conditional sales contract and for damages. The complaint in four paragraphs alleged the minority of the appellee Overton Coomer, and fraud and misrepresentations alleged to have been made by the appellants as to the condition of the motor of a used automobile at the time of the sale of such used automobile by appellants to appellee. Other allegations were contained with reference to the Associates Investment Company which financed the sale and the purchase of such automobile, and a co-defendant in the trial below. The court below, on motion, directed a verdict for said co-defendant, Associates Investment Company, on all paragraphs of plaintiffs' amended complaint. Issues were joined on the amended complaint in four paragraphs, the answer of the defendant Murphy Auto Sales, Inc., the answer of Associates Investment Company, and the separate answer of the defendants Ebbie A. Murphy and Thomas Kesserling. The cause was tried by a jury and the jury found for the appellees on the first paragraph of their amended complaint and against the defendants and each of them except the Associates Investment Company, for which defendant's motion for a directed verdict was sustained. Judgment was entered on the verdict in favor of both appellees and against the appellants, Murphy Auto Sales, Inc., Ebbie A. Murphy and Thomas Kesserling, in the sum of $2300. The appellants' (Murphy Auto Sales, Inc., Ebbie A. Murphy and Thomas Kesserling) motion for a new trial was overruled and this appeal taken by such parties.

The sole error assigned for reversal is the action of the trial court in overruling appellants' motion for a

new trial. The first five specifications in appellants' motion for a new trial are that the damages are excessive; that the damages assessed by the jury are excessive; the amount of damages fixed by the jury are excessive; error in the assessment of the amount of recovery, being too large; and the verdict returned by the jury is erroneous for such reasons. Other specifications of error in the motion for a new trial are that the verdict is not sustained by sufficient evidence and is contrary to law, and sets out certain alleged errors at law occurring at the trial with reference to the admission of the testimony of certain witnesses.

Both parties have conceded that under the most favorable evidence appellees' actual or compensatory damages was the sum of $700 and that therefore the balance of the verdict, to-wit: $1600 represents the amount of punitive damages included in the $2300 verdict.

From the record the following facts appear: That the minor, Overton Coomer, went to the automobile sales lot maintained by the defendant, Murphy Auto Sales, Inc., and talked with Ebbie A. Murphy and Thomas Kesserling, a salesman for said Company, and discussed the purchase of a 1941 Buick automobile, and that he asked about trying it out and they said it would not be necessary because they guaranteed the car being in good running condition and that the motor was in good shape. Details of a trade involving an automobile owned by the appellee Coomer were discussed with Murphy and Kesserling, and Coomer agreed to trade his automobile in on the Buick. After that Murphy and Coomer went into the office and filled out the contract in the presence of Kesserling. Murphy said that the motor was in excellent condition and if anything went wrong with the car they would stand good for it. Murphy and Coomer got into the automobile and drove out

to Coomer's house after he had signed the papers. Coomer started to read the papers before he signed them and Murphy said it would not be necessary "we are just wasting a lot of time." Murphy said, "We will have to go out to your house and have your father sign them" after Coomer told him he was only nineteen years of age. Coomer drove the car from the Murphy auto lot to his home and made some complaint about the motor and Murphy said it was just the tappets loose and needed some adjustment. After they reached Coomer's home Kesserling, the salesman, told Coomer's mother, the appellee Alma Coomer, that the car was in excellent condition and asked her to sign the papers, and that he was out there because Overton Coomer wanted to trade his automobile in on this 1941 Buick Roadmaster. She told him she had no objection if he was getting a car that was in good condition and that if the car he was getting was in good condition she would sign the papers. The salesman told her that the car was in good condition inside and out, that the motor had just been overhauled and repaired and was in perfect condition, and that they would guarantee it and stand by the guarantee thirty days, and that if anything went wrong with the car if they would bring it in they would fix it at their expense.

One Robert L. Miller, a mechanic, testified that he accompanied Overton Coomer to the Murphy sales lot and that at that time saw the 1941 Buick in question; accompanied Overton Coomer to the Murphy Sales lot that Coomer talked with Mr. Kesserling, an auto salesman on the Murphy lot, and that they went in to talk to Mr. Murphy. That Coomer started the motor on the car and Mr. Kesserling came out and said there wasn't any need to drive the car that the car was guaranteed and the motor was overhauled. At that time one of the auto-

mobile salesmen drove Coomer's automobile to see if anything was wrong with it and brought it back to the lot. Overton Coomer asked then if he could drive the car he was purchasing and they said there was no need of it, that the car was guaranteed and was all right. After that Kesserling, the salesman, and Coomer came out of the office and drove the car out to Coomer's home. During the trip Coomer asked Kesserling what a certain noise in the motor was and he explained it was just loose tappets. The mechanic testified he lifted the hood of the automobile and the motor looked perfectly clean as if it had just been rebuilt as stated by Kesserling. Miller, the mechanic, further testified that about a week or so later he went to the D. L. Stone Agency and examined the motor of the Buick car in question. Over objection he testified that the "cylinder walls of the motor had been scored, the crankshaft was scored and out of round, the interior of the motor was very dirty, had sludge it took years to put in there and there was a ridge at the top of the cylinder walls which would take quite a bit of wear to put it in there, the valves in the car were sticking at the time. And the motor, in other words, was just generally shot. There was carbon on top of the pistons and the pistons were scored—the babbit was beaten out of the connecting rods and the crankshaft was scored to the point where there would never be another rod held onto it and the shaft had to be turned in order to get the motor running at all." This witness further testified as an expert mechanic that in his opinion the car had not been overhauled.

Further evidence in this case shows that the car was not driven following the sale except to the automobile lot and back to the home of appellee where the car was put into the garage. That on the following morning the appellee, with his mother and family, started to

drive the Buick automobile to Logansport and reached a point about 22 miles out of Indianapolis when the rods started knocking on it and Coomer got out underneath. There was oil dripping out from the motor and he started back to Indianapolis and that the rods knocked all the way and they were unable to continue their trip. Coomer testified that he had the oil checked, had gasoline put in and had the water checked prior to starting on this trip. That on the following morning he called the Murphy Auto Sales and told them the rods went out and he wanted to bring it in to have it fixed. Kesserling told him he would have to see Mr. Murphy. Later he talked to Mr. Murphy and told him the same thing. Murphy refused to fix it and said if any fixing was done he would have to charge him for it. That Murphy, when he refused to fix the car told him, "That's too bad, I've already got your money." Later Coomer took the car to the D. L. Stone Agency to be repaired where it was later examined by Miller and found to be in the condition described in the previous testimony herein set out.

Appellants assignments of error are grounded on the claim that the amount of punitive damages assessed are excessive and out of proportion to the actual damages shown; that punitive damages bear no relation to the injury inflicted and the cause thereof, and assert that only simple fraud has been shown and that the assessment of punitive damages is not warranted; that the verdict is contrary to law in that there is a failure of proof as to actual fraud and that aggravating circumstances are not shown upon which to predicate punitive damages; and that the court erred in the admission of certain evidence over the objection of appellants.

Both sides to this appeal concede that the amount of compensatory damages amounted to $700 and the ex-

emplary or punitive damages amounted to $1600. ■ Indiana cases since the fifth Indiana Report have recognized a rule allowing punitive damages which has been characterized by strictness rather than liberality. *Taber* v. *Hutson* (1854), 5 Ind. 332; *American Sand, etc., Co.* v. *Spencer* (1914), 55 Ind. App. 523, 103 N. E. 426; *Wheatcraft* v. *Myers* (1914), 57 Ind. App. 371, 107 N. E. 81; *Kluge* v. *Ries* (1918), 66 Ind. App. 610, 117 N. E. 262; *The Louisville, New Albany & Chicago Railway Co.* v. *Wolfe* (1891), 128 Ind. 347, 27 N. E. 606. In 25 C. J. S., Damages, §120, p. 716, it is stated:

> "As a general rule exemplary damages are not recoverable in actions for the breach of contracts, irrespective of the motive on the part of defendant which prompted the breach. No more can be recovered as damages than will fully compensate the party injured. . . .
>
> "Where the acts constituting a breach of contract also amount to a cause of action in tort, there may be a recovery of exemplary damages upon proper allegations and proof. As sometimes stated, exemplary damages are recoverable for a tort committed in connection with, but independently of, the breach of contract, where the essentials of an award of such damages are otherwise present, the allowance of such damages being for the tort and not for the breach of contract. In order to permit a recovery, however, the breach must be attended by some intentional wrong, insult, abuse, or gross negligence which amounts to an independent tort."

In *Wheatcraft* v. *Myers, supra,* this court clearly stated the rule that where malice, fraud, oppression, etc., enter into a tort, exemplary damages may be assessed, citing *Harness* v. *Steele* (1902), 159 Ind. 286, 64 N. E. 875. It seems clear that despite conflicting expressions the courts of this state have recognized punitive or exemplary damages in a proper case. Punitive or exem-

plary damages do not rest upon any ground of abstract or theoretical justice but upon the basis of an established public policy which seeks to promote the public safety and to punish through the medium of a civil proceeding a fraudulent wrongdoer, and where malice, gross fraud and oppressive conduct is shown punitive damages are allowable to deter other wrongdoers from offending in a like manner. It is true that the doctrine of punitive damages has been criticized in some states and such doctrine has been referred to as a "heresy" or "deformity" in the law. *Murphy* v. *Hobbs* (1884), 7 Colo. 541, 5 P. 119, 49 Am. Rep. 366. The doctrine of punitive or exemplary damages has been sparingly applied and strictly limited by the adjudicated cases in this state. However, we must recognize that this doctrine exists with a limited application in this jurisdiction.

We are called upon in the instant case to decide two major propositions: first, whether upon the circumstances shown by this record the assessment of punitive damages was justified; and second, whether such punitive damages were excessive in the light of the circumstances shown in the instant case. In 165 A.L.R., pages 618, 619, references are made to the Indiana cases of *Wheatcraft* v. *Myers, supra,* and *Kluge* v. *Ries, supra,* which latter case was an action for fraud and misrepresentations as to the value of corporate stock inducing a sale. The foregoing A.L.R. reference concludes with the statement, citing other Indiana cases that "according to the language used in some cases, mere unaggravated fraud seems to constitute a sufficient basis for the award of punitive damages. It should be noted, however, that none of the cases contains the positive statement that simple fraud in a sale warrants the award of punitive or exemplary damages,

but the cases merely do not stress the necessity of the presence of some aggravation." By reason of the present state of the law with reference to exemplary damages it becomes necessary for us to determine whether sufficient gross fraud appears in the instant case to warrant the application of the doctrine. We have a situation where the jury could have reasonably inferred that the appellants, with apparent maliciousness and a desire to oppress, set about to dispose of a car with a worn out motor to a minor and his mother. It could also be reasonably inferred that a deliberate attempt was made to deceive by reason of the clean outside appearance of the motor, a guarded reserve in demonstrating the car and the repeated reference to the fact that the motor had been overhauled where the babbit was beaten out of the connecting rods and the crankshaft was scored to the point where another rod would not be held onto it, that the tappets were noisy for the purpose of covering up a small rod knock, and other things done for the purpose of taking the rod knock out at a time when the appellants knew, or by the exercise of reasonable care could have known, that the rods were out at the time of the sale, or would soon thereafter go out.

In accordance with the holding in the case of *Wheatcraft* v. *Myers, supra,* the evidence in the record is sufficient to justify an allowance of punitive damages. In addition, it appears to this court that the record supports the finding that the fraud in the instant case was aggravated and willful.

The appellants' entire attitude regarding the transaction in question was one of malice and oppression as exemplified by the fact that they took $200 from the appellee Alma Coomer, the mother of the minor appellee, for the purpose of paying off a

balance due on the Oldsmobile automobile which he traded in. There was a refund due on such amount of $29 which Murphy refused, upon request, to give back. While the doctrine of punitive damages is somewhat of a legal anomaly, and is based upon broad grounds of public policy, and exists for the purpose of punishment of guilty parties for wicked, corrupt and malicious motives and design which accomplish fraud, and while the cases hold that it should not be applied in the absence of malice, fraud and oppression, it appears to this court that the aggravated circumstances in the instant case justify the application of this doctrine, and the court did not err in submitting the question of punitive damages to the jury, and the jury was justified in making an award of such damages.

The second question arises as to whether or not the punitive damages of $1600 in a verdict which included compensatory damages of $700 were excessive. As stated in *American Sand, etc. Co.* v. *Spencer, supra:*

> "The amount of compensatory damages in a given case is determined by recourse to rules of law for measuring damages, while the amount of exemplary damages, where such damages may be assessed, rests in the sound discretion of the jury, guided by proper instructions given by the court, * * *."

While such damages are not limited to an amount equal to the compensatory damages they must not be so excessive as to indicate that the jury was guided by passion and prejudice. It appears to this court that the award of punitive damages in the instant case was not unreasonably proportioned to the actual damages and that the jury under the instructions of the court did not unreasonably assess the punitive damages. The power which this well established rule conferred upon the jury in the instant case may operate as

a salutary restraint upon the evil passions of unscrupulous men.

Appellants further insist that the verdict is not sustained by sufficient evidence and is contrary to law. They assert that the appellees below were not entitled to recover on the first paragraph of complaint, and under a general verdict, because either one or the other and not both plaintiffs were sold the Buick automobile by the appellants. In the trial court the appellants made no objection to the form of verdict given to the jury by the trial court and did not offer other forms of verdict whereby but one plaintiff or appellee would be entitled to recover. Rule 1-7, Rules of Supreme Court of State of Indiana; *McCague* v. *N.Y.C. & St. L. R. Co.* (1947), 225 Ind. 83, 71 N. E. 2d 569, 73 N. E. 2d 48.

It would appear from the record that the appellee Alma Coomer holds a legal interest in the automobile and that she signed the conditional sales contract, and that her minor son, Overton Coomer, had an equitable interest in this automobile. The manner of negotiating this transaction was at the special instant of the appellants for the appellants' benefit. There was also sufficient evidence to justify the finding of the jury that the worn out condition of the motor was known to the appellants and concealed from appellees. There was sufficient evidence to support the verdict of the jury, and the evidence showed a misrepresentation of the condition of the purchased automobile and damages as a result of the misrepresentation. *Bush* v. *German-American Bldg. Assn.* (1904), 33 Ind. App. 583, 71 N. E. 914; *Boyer* v. *Leas* (1946), 116 Ind. App. 502, 64 N. E. 2d 38, 64 N. E. 2d 591.

Appellants further allege error of law occurring at the trial in overruling the defendants' objection to the following question:

Q. "Now Mr. Miller, I would like for you to tell this Court and Jury the appearance of that motor as it appeared there at the D. L. Stone Agency at that time."

The objection to this question was:

"To which question the defendants and each of them separately and severally object for the reason that it has not been shown whether this motor as then examined by the witness was in the same condition that it was immediately following the time that the plaintiffs claim that it failed. It has not been shown who tore the motor down or in what manner or when it was. It is an effort to show the condition of the motor at some other time without showing whether that was the condition of the motor at the time and on the day when they claim, the plaintiffs claim, that there was a failure on the part of the motor."

This objection was overruled and the witness' answer was given as follows:

A. "The cylinder walls of the motor had been scored, the crank shaft was scored and out of round, the interior of the motor was very dirty, had sludge it took years to put in there and there was a ridge at the top of the cylinder walls which would take quite a bit of wear to put it in there, the valves in the car were sticking at the time. The motor, in other words, was just generally shot."

It is apparent that appellants were not harmed by this question and the answer thereto, for the reason that the answer itself showed definitely a continuation of conditions and described the condition of the motor which could only be attributable to a continuing and permanent condition.

The appellants also assign as error the court's overruling of the objection to the question asked of the wit-

ness Miller, an expert mechanic, whether the motor had been overhauled on the 9th day of October, 1948, or immediately prior thereto, to which question the witness answered "No". The objection to this question was grounded on the fact that the date in question was not supported by the evidence and that the question called for a conclusion of the witness. Considering the circumstances and the fact that the date was sufficiently related to the transaction in question and the uncontroverted facts as to the condition of this motor, it could not be said that the appellants were harmed by such question and the answer thereto. The law is well settled that where an expert speaks from personal observation he may give his opinion as based thereon. The question calling for such opinion need not be stated in hypothetical form. Wigmore on Evidence, §675, p. 796. The opinion evidence of an expert is admissible where the subject dealt with is one concerning intricate motors and machinery. *Jones* v. *Angell* (1884), 95 Ind. 376; *W. McMillan & Son* v. *Hall* (1915), 59 Ind. App. 545, 109 N. E. 424.

Further error is predicated on the introduction of the testimony of the witness Don G. Ball relative to the sale of the Buick automobile by the Associates Investment Company at public auction in August, 1949, and specifically to the question as to how much the automobile was sold for at such later date. The answer to this question was that it was sold for $400. The objection to such question was that the value of the automobile in 1949 is not within the issues of this case.

The record discloses that the appellee Alma Coomer had signed a conditional sales contract by the terms of which she would be liable for a deficiency over the amount for which the car was sold by the finance com-

pany.  If evidence is material, competent, and admissible for any purpose under the issues formed by the pleadings, it is proper to admit it.  While it is true that such evidence as to a sale at public auction at a later date would be improper as fixing the value of the automobile in question at the time and place of the transaction, any error existing in regard to such testimony was harmless to the appellant in the light of the court's instruction which directed the jury to fix the value of the automobile in question at the time and place of the transaction.  The jury was fully instructed by the court as to the proper measure of damages.  *Evansville & Terre Haute R. R. Co.* v. *Montgomery* (1882), 85 Ind. 494.  In addition, there is other competent evidence fixing the value of the automobile at the time of the transaction.

Other error is predicated on the admission of evidence based upon the grounds that certain questions proposed to witnesses were leading, suggestive, self-serving and called for the conclusion of such witnesses.  As to the admission of such evidence the appellants have not shown an abuse of judicial discretion prejudicial to appellants.

We have carefully examined the record in this case and we find that a fair trial was had and a just result reached under the law and the evidence.

Judgment affirmed.

NOTE.—Reported in 112 N. E. 2d 589.