Luther L. LEATHERMAN, Plaintiff-
Appellee,

v.

GATEWAY TRANSPORTATION CO.,
and J. C. Orville Wilcox,
Defendants-Appellants.

No. 14151.

United States Court of Appeals
Seventh Circuit.

April 20, 1964.

Rehearing Denied May 27, 1964.

242

William E. Borror, Leigh Hunt and William L. Wilks, Fort Wayne, Ind., for appellants.

James L. Larson, James W. Jackson, Fort Wayne, Ind., for appellee.

Before SCHNACKENBERG and KILEY, Circuit Judges, and MERCER, District Judge.

MERCER, District Judge.

Plaintiff filed this suit in the court below for damages for personal injuries alleged to have resulted from a collision involving two trucks. Following a non-jury trial, the court entered judgment against the defendants and assessed plaintiff's damages in the amount of $31,-500.00. Defendants advance several arguments for reversal of that judgment upon this appeal.

The collision which gave rise to this suit occurred on January 24, 1959, in the town of Bremen, Indiana. Plaintiff was driving a tanker unit westerly on U. S. Highway 6. Defendant, Wilcox, was driving a semi-trailer unit which was owned by defendant, Gateway, easterly upon the same highway. As the two vehicles approached each other, the vehicle operated by Wilcox veered to the right, struck a bank of frozen snow and ice upon the berm of the highway, went out of control and jackknifed across the highway striking the vehicle operated by plaintiff.

The trial court found that the defendant, Wilcox, was negligent in respects hereinafter delineated and that his negligence was the proximate cause of the collision and plaintiff's injuries.

Defendants do not contest the finding that Wilcox was negligent. The first major contention is that the evidence shows that independent agencies over which defendants had no control inter-vened which were the proximate cause of the collision and any damages which plaintiff may have sustained therefrom.

Related to that contention, the trial court found that the highway upon which the collision occurred was snow-covered and hazardous; that shortly prior to the collision Wilcox was operating his vehicle within the limits of the town of Bremen at a speed between 30 and 40 miles per hour; and that Wilcox operated his vehicle "at a speed in excess of that which a reasonably prudent man would operate a vehicle in view of the hazardous conditions and circumstances then existing and well known to the defendant Wilcox." The collision occurred in front of a shopping center. As the vehicle driven by Wilcox approached the shopping center, a pick-up truck pulled from the parking lot at the center from Wilcox's left and entered his lane of traffic approximately 50 feet in front of the tractor which he was driving. The court found that the pick-up truck entered the highway at an angle which required no sharp turn and that it was travelling at approximately the same speed as was Wilcox's vehicle. Thereafter, Wilcox permitted his vehicle to close the distance between the rear of the pick-up truck and the front of his tractor to approximately 25 feet. The pick-up truck either stopped or greatly reduced its speed. Because of the close proximity of his tractor to the rear of the pick-up truck, Wilcox attempted to turn his unit to the right and enter a garage parking area. When he turned onto the berm of the highway he struck a bank of frozen snow and ice which was approximately 18 inches higher than the surface of the highway and lost control of his vehicle. The trailer of the Wilcox rig then jackknifed across the highway and collided with plaintiff's truck.[1]

1. The evidentiary facts related to the pick-up truck are found in finding 8 of the court. Defendants contend that that finding of fact is contrary to finding of fact 6. In summary, the court found in finding 6 that plaintiff was operating his vehicle at a speed ten to fifteen miles per hour, that he first observed the defend-ants' rig when it was about one and one-half blocks from the point of collision and that defendants' vehicle then appeared to be slipping about on the ice. There are three reasons why that contention lacks merit: a. A rather vivid imagination is required to find any incompatability be-tween the two findings; b. The findings

Defendants argue that the advent of the pick-up truck and the possible negligence of the driver of the pick-up truck, operating in conjunction with the ridge of frozen snow and ice, were intervening agencies which "must be regarded as the proximate cause of any injury and any original negligence must be considered as only the remote cause."

Under Indiana law, if an independent responsible agency intervenes following a negligent act, in a way which could not reasonably have been foreseen, resulting in the injury of another, the negligent actor may be relieved from legal responsibility for the injury. E. g., City of Indianapolis v. Willis, 208 Ind. 607, 194 N.E. 343; Kiste v. Red Cab, Inc., 122 Ind.App. 587, 106 N.E.2d 395; Engle v. Director General of Railroads, 78 Ind.App. 547, 133 N.E. 138. That principle is correctly set forth in defendants' brief upon this point, but, unfortunately for their cause, it does not lead to the result contended for.

City of Indianapolis v. Willis, 208 Ind. 607, 194 N.E. 343, and Engle v. Director General of Railroads, 78 Ind.App. 547, 133 N.E. 138, reflect the correct embodiment and application of the principle.

Engle involved a passenger upon a train who had been killed under Rube Goldbergian circumstances. The train struck an automobile and threw the automobile against a switch, with the result that the train was switched onto a side track where it struck other railroad cars standing on the side track causing the death of the passenger on the train. The court, quoting Cleveland, C., C. & St. L. R. Co. v. Clark, 51 Ind.App. 392, 97 N.E. 822, stated the intervening agency doctrine in the following language:

> " 'Where there is an intervening responsible agency, which directly produces the injury, as in this case, the question as to whether the original negligence is to be regarded as the proximate cause of the injury, or only as a condition, or remote cause, is to be determined by ascertaining whether the agency which intervened was of such a character, and the circumstances under which it occurred were such, that it might have been reasonably expected that such agency or a similar one would intervene in such a way as to be likely to produce an injury similar to the one actually caused. If, under the circumstances, the intervention of such an agency in the manner stated might reasonably have been expected in the usual course of events, and according to common experience, then the chain of causation, extending from the original wrongful act to the injury, is not broken by the independent, intervening agency, and the original wrongful act will be treated as the proximate cause. * * * On the other hand, if the agency intervening was one over which the original tort-feasor had no control, and which was not put in motion by the original wrongful act; and if the character of the intervening agent, and the manner of the intervention, were such as, under the circumstances, could not reasonably have been expected to occur in the ordinary course of nature and according to common experience—then such independent agency so intervening will be treated as the sole proximate cause, and the original wrongful act will be treated as only a condition.' " 133 N.E. at 139.

The intervening agency doctrine was invoked by the City in City of Indianapolis v. Willis, 208 Ind. 607, 194 N.E. 343, a wrongful death action. The plaintiff's decedent was killed when a cab in which decedent was riding ran into a canal at the intersection of a street with the canal. No guard rails, signals or other warning devices were maintained

are evidentiary facts, only, and there is no contention that either is in conflict with the ultimate findings of the court or that either is not supported by the evidence; c. Evidentiary facts included in a finding are surplusage and may be disregarded. Gay Games, Inc. v. Smith, 7 Cir., 132 F.2d 930.

by the City at the street-canal intersection. The court rejected the City's argument that the negligence of the cab driver was an intervening agency relieving the City of liability saying, in part:

" 'The fact that some other cause operates with the negligence of a defendant does not relieve him from liability. * * * [The City's negligence contributed to the injury and cannot be said to be a remote cause] for the reason that whatever it did contribute it contributed at the time and place of the injury. Another event occurred to produce appellant's injury, but this event could not have produced the injury but for appellee's negligence. * * * Clearly, there were two causes combining to produce the result, and the city was responsible for only one of these causes. Yet it cannot escape liability because it was not responsible for the other. * * * If the city, by its negligence, put in motion a cause which continued to the end, and without which the injury would not have occurred, although a third person may have contributed to the final result, yet the city's negligence must be held to be a proximate cause of the injury.' " 194 N.E. at 347, quoting Alexander v. Town of New Castle, 115 Ind. 51, 17 N.E. 200.

■ It is clear from the decisions and the quoted language of those two cases that the courts of Indiana require a supervening cause of the injury before it will be held, as a matter of law, that an intervening, responsible agent was the proximate cause of an injury.

■ Here the trial court found that the negligence of Wilcox was the proximate cause of the collision, and our function is limited to the determination whether that finding is clearly erroneous. Fed.R.Civ.Proc. 52(a). The trial court further found that Wilcox operated his vehicle immediately prior to the collision at a rate of speed in excess of what was reasonable under the icy conditions of the highway and circumstances known to him to exist, that he failed to maintain a safe distance between his vehicle and the pick-up truck in front of him, and that he failed to consider those foreseeable events and circumstances which a reasonably prudent driver would have considered.

■ The icy condition of the highway is not disputed. Defendants cannot, in their argument, dispute the evidence as to the speed at which Wilcox was operating his vehicle. The evidence revealed that the bank of frozen snow and ice was a factor known to Wilcox to exist inasmuch as such a bank of snow and ice was present upon the berm of the highway to his right over a substantial part of the route which he was travelling. Finally, it certainly was a reasonably foreseeable circumstance that another vehicle might drive onto the highway and into his lane of travel. The most that can be said in support of defendants' position is that excessive speed, the icy condition of the highway, the presence of the pick-up truck and the presence of the bank of frozen snow and ice combined to cause this collision. The finding that the negligence of Wilcox was the proximate cause thereof is not clearly erroneous on this record.

The second prong of the same argument arises out of the nature of plaintiff's condition as revealed by the evidence in this case. The evidence discloses that plaintiff suffers a mental condition described as a conversion reaction, as a consequence of which he transfers anxieties and fears through an aberration of the mental processes into actual physical pains.

Defendants argue that the mental attitude of the plaintiff must be considered as an efficient intervening cause of the injury or illness from which he now suffers. They argue that the physical injuries suffered by plaintiff in the collision were slight and required a minimum amount of treatment; that plaintiff's conversion reaction is the result of an aberration of his own mind which caused him to brood upon the fact of the collision and the serious physical injuries which might have resulted therefrom;

and that his present debilitating condition is the direct result of that brooding and not a foreseeable consequence of defendants' negligence.

 Mental anguish or mental suffering are not compensable unless such conditions are coincident to, and the natural result of, actual physical injury. E.g., Boston v. Chesapeake & O. R.R. Co., 223 Ind. 425, 61 N.E.2d 326, 327; Lake Erie & W. R. Co. v. Johnson, 191 Ind. 479, 133 N.E. 732, 733; Indianapolis Street R.R. Co. v. Ray, 24 Ind.App. 374, 78 N.E. 978. If no physical injury results from a negligent act, mental distress or anguish is not compensable. Cleveland, C. C. & St. L. Ry. Co. v. Stewart, 56 N.E. 917. On the other hand, if the negligent conduct causes any physical injury, and if there is any evidence that a mental condition resulted therefrom, the issue whether the mental illness is a natural and direct result of such physical injury is a question of fact. Boston v. Chesapeake & O. R. Co., 223 Ind. 425, 61 N.E.2d 326, 327; New York, C. & St. L. R. Co. v. Henderson, 237 Ind. 456, 146 N.E.2d 531, 147 N.E.2d 237; cf., Indianapolis St. Ry. Co. v. Ray, 167 Ind. 236, 78 N.E. 978.

The plaintiff in Boston drove onto a railroad track at a street intersection therewith. His car was struck by a slowly moving, backing train and pushed some 150 feet by the train. His actual physical injuries were slight, but his fear of being crushed so burdened his mind that he collapsed some ten days later. The judgment of the trial court upon a directed verdict for the defendant was reversed for the reason that the facts above summarized were held to present a question for the jury whether the mental illness was a natural consequence of the physical injuries sustained by the plaintiff.

 In this case, plaintiff's physical injuries did not require immediate hospitalization.[2] There is evidence of rec-

ord, however, that the force of the impact of the collision was considerable and that plaintiff was thrown against the left side and door of his tractor sustaining injuries to the head and other members of his body. There is medical evidence that plaintiffs suffered spinal and nerve root damage as a result of this collision, with resultant organic damage continuing to the time of this trial. There is further medical testimony that plaintiff's mental condition is of traumatic origin. The court below resolved the conflicts in the evidence in favor of plaintiff and found that defendants' negligence was the proximate cause of his debilitating mental condition. We cannot say that those findings are clearly erroneous, or that the court failed to apply the correct principles of law to his decision.

What has been said above disposes of defendants' contention that Indiana law will not permit recovery for psychoneurosis in the absence of injury directly attributable to a negligent act. A connection between plaintiff's condition and the physical injuries sustained in the collision was found to exist by the court below. Thus, the principle asserted has no application to the facts of this case.

One further contention of defendants requires brief exposition. The plaintiff's complaint did not allege psychoneurosis as an element of injury. At the close of the trial, the court began its findings of fact by stating that it deemed the pleadings amended to conform to the evidence, and then proceeded to find that plaintiff suffered a neurotic impairment which is a compensable element of his damages.

 Defendants argue that the court erred in ordering that the pleadings be conformed to the evidence and that the evidence of psychoneurosis took defendants by surprise. Since neither of those contentions was spelled out in defendants' motion for a new trial, we might conclude that they can not be raised. In any event, the argument has no merit.

2. Plaintiff was treated at a hospital immediately after the collision and released the same day. He returned to work a few days thereafter and continued to work for several weeks before, as he testified, he became unable to work.

The trial court's order was in conformity with the provisions of Rule 15(b), Fed. R.Civ.Proc., that when issues not raised by the pleadings are tried by consent of the parties, such issues will be treated as having been raised by the pleadings. It appears from the record that defendants did not object to the introduction of psychiatric testimony, and, further, that they were advised in advance of the trial that plaintiff would call psychiatrists as witnesses.

We have considered and rejected contentions that plaintiff's testimony was not worthy of belief and that the damages awarded in this case are excessive. Finding no error in the record, we affirm the judgment

Affirmed.