JEFFERSONVILLE SILGAS, INC. AND MADISON SILGAS, INC. *v.* ROBERT N. WILSON AND EVELYN WILSON.

[No. 1-872-A-52.  Filed December 11, 1972.]

*George A. Leininger Jr., Schnaitter and Leininger*, of Madison, for appellants.

*John Ready O'Conner*, of Madison, *Ted. R. Todd, Ford, Hensley and Todd*, of Madison, for appellees.

LOWDERMILK, J.—This is an appeal from a judgment in favor of the plaintiffs-appellees for conversion of a gas tank and fuel system. The case was tried to the court without a jury, with evidence consisting of answers of interrogatories, stipulations of certain facts, and testimony by both plaintiffs-appellees, Robert N. Wilson and his wife, Evelyn Wilson.

Defendant-appellants, Jeffersonville Silgas, Inc. and Madison Silgas, Inc. declined to present any evidence or witnesses and rested their case at the conclusion of appellants' case.

Judgment was in the amount stipulated as the value of the tank and fuel, plus interest from the date of the taking; plus the amounts prayed for mental anguish ($2,000.00) and punitive damage ($5,000.00). Appellants timely filed their motion to correct errors, which was overruled by the trial court, and this appeal follows.

Appellants admit to liability for the conversion of the tank and fuel and at trial stipulated the worth of said tank and fuel to be $380.00, plus interest from the date of conversion, which interest was in the sum of $187.09.

The issues presented by the motion to correct errors are the decision of the trial court is contrary to law, contrary to the evidence, and awarded the appellees an excessive amount of recovery.

The facts may be briefly stated as follows. In 1952, the appellees had purchased outright a one thousand gallon fuel tank from appellants and used the tank until October of 1963. Appellees purchased fuel from appellants continuously during this period of years.

Prior to the taking, a representative of appellants called on Mrs. Wilson and informed her that the company was going

to take the tank because there had been no order to refill it. Mrs. Wilson's response was to the effect that the representative would have to talk to Mr. Wilson. The record is silent as to whether or not she did discuss this with Mr. Wilson.

The tank was taken by appellants a few days later while appellees were in the process of moving to a new home and this conversion was subsequently discovered by the appellees. Mr. Wilson then went to the office of appellants and discussed the problem with a clerk, who, in error, informed him that appellants owned the tank and had removed it. Mr. Wilson stated he became so angry he was shaking and left without further discussion. There is nothing in the record to show that Mr. Wilson even attempted to explain to the clerk with whom he talked that he was the owner of the tank and had purchased the same when it was first set on his property and had continued to be the owner in sole possession of the same. Appellees had no further contact with appellants until the trial of this action.

Appellants first contend that the trial court's decision granting the appellees punitive damages was contrary to law and appellants argue that punitive (or exemplary) damages cannot properly be awarded unless malice, fraud, gross negligence, oppression, or willful and wanton misconduct on its part has been proved by the evidence.

Appellants rely on the case of *Murphy Auto Sales, Inc., et al.* v. *Coomer, et al.* (1953), 123 Ind. App. 709, 112 N.E.2d 589, which recognized that the rule allowing punitive damages has traditionally been construed strictly. The court, in *Murphy*, stated the rule as follows:

". . . It seems clear that despite conflicting expressions the courts of this state have recognized punitive or exemplary damages in a proper case. Punitive or exemplary damages do not rest upon any ground of abstract or theoretical justice but upon the basis of an established public policy which seeks to promote the public safety and to punish through the medium of a civil proceeding a fraudulent wrongdoer, and where malice, gross fraud and op-

pressive conduct is shown punitive damages are allowable to deter other wrongdoers from offending in a like manner. . . . The doctrine of punitive or exemplary damages has been sparingly applied and strictly limited by the adjudicated cases in this state. . . ."

The court went on to hold that punitive damages were proper in *Murphy* because of aggravated circumstances.

This court discussed the question of punitive damages in the case of *Sinclair Refining Co.* v. *McCullom, et al.* (1940), 107 Ind. App. 356, 365, 24 N.E.2d 874, as follows:

"It must be conceded, as a general rule, that in order that there may be a recovery of exemplary damages, there must be present in the circumstances some element of malice, fraud, or gross negligence. In other words, the wrongs to which exemplary damages are applicable are those, which besides violating a right and inflicting actual damages, import insult, fraud, or oppression and are not merely injuries, but injuries inflicted in a spirit of wanton disregard of the rights of others.

"Mere negligence alone does not authorize punitive damages. . . ."

Both parties rely on the case of *Monarch Buick Company, Inc.* v. *Kennedy* (1965), 138 Ind. App. 1, 3, 209 N.E.2d 922, which is an action in conversion wherein the defendant-appellant was charged with tortiously converting the appellee's automobile and in which the plaintiff-appellee prayed for exemplary damages.

Our Supreme Court stated:

". . . that where '. . . malice and oppression weigh in the controversy, exemplary or vindictive damages may be assessed.' *The Louisville, New Albany and Chicago Railway Company* v. *Wolfe* (1891), 128 Ind. 347, 352-353, 27 N.E. 606. Fraud of the defendant in his actions toward the plaintiff is also an element. *Murphy Auto Sales, Inc. et al.* v. *Coomer, et al.* (1953), 123 Ind. App. 709, 112 N.E.2d 589. The general rule concerning whether exemplary damages are allowable in actions in conversion is found in 89 C.J.S., *Trover & Conversion,* § 148 (b) wherein it is stated:

" 'It is proper to submit to the jury the question of exemplary damages where the facts authorize a finding of malicious or reckless and wanton conversion.' "

Appellants contend that the burden of proof is on the plaintiffs-appellees to establish the elements required for punitive damages and argue that there was not sufficient evidence to properly award punitive damages in this case.

Plaintiffs-appellees contend that a prima facie case was established at the trial and that it was proper to award punitive damages. Appellees further argue that only one element, i.e., malice, fraud, oppression, et cetera, need be shown to establish a basis for awarding punitive damages.

Appellees argue in their brief only one theory to establish that punitive damages were properly awarded. Appellees depend on the doctrine of "implied malice" and contend that appellants' action in converting the tank was reckless, which can be inferred from the fact that the contract prepared by the appellants in 1952 specifically stated that appellees were the owners of the tank in question. Appellees further contend that there is an inference or implication of reckless and malicious conduct from the fact appellants' clerk refused to recognize any right of the appellees to the tank when Mr. Wilson went to the office of appellants to protest.

We must necessarily determine from the cases above cited that before a court may properly award punitive damages there must be some element of malice, fraud, oppression, gross negligence, or willful and wanton misconduct shown on the part of the defendant for the plaintiff to meet plaintiff's burden of proof. It is also noted that the words "or willful and wanton misconduct" are in the conjunctive and is one and only one separate element.

Defendants-appellants' next contention is that the trial court's granting of damages for mental anguish was contrary to law, not supported by sufficient evidence, and excessive.

Plaintiffs-appellees answer this with the argument that

damages for mental anguish were proper and supported by evidence of harassment and mental distress.

To support their contention plaintiffs-appellees cite *Anchor Stove and Furniture Co.* v. *Blackwood* (1941), 109 Ind. App. 357, 37 N.E.2d 117, wherein damages for mental anguish were not awarded. *Anchor* was a replevin action, with an award of $50.00 in addition to compensatory damages. Plaintiffs-appellees, in the case at bar, contend that in *Anchor* the $50.00 damages were for mental anguish, but a careful reading of that case discloses that such is not correct. The trial court awarded the $50.00 for the taking and withholding of the property, but there is no mention made of damages for mental anguish.

Plaintiffs-appellees also cite *Aetna Life Insurance Company* v. *Burton* (1938), 104 Ind. App. 576, 12 N.E.2d 360, where damages for mental anguish were allowed. In this case the defendant performed an illegal autopsy on the deceased husband of the plaintiff. This case involved facts which were special to removing the innards of plaintiff's husband without her consent and his body when in the casket had a bloody looking substance running from the nose. It is our opinion that *Aetna* is so dissimilar to the case at bar that it is not authority for the position taken by plaintiffs-appellees.

Plaintiffs-appellees further rely on the case of *Indiana Railway Company* v. *Orr* (1908), 41 Ind. App. 426, 84 N.E. 32, where the plaintiff was wrongfully ordered off a streetcar with implied threats of physical violence in front of witnesses known to the plaintiff. The court in that case found that an implied threat of violence was present, although no physical contact or injury occurred.

The *Aetna Life Insurance Company* case is distinguished by *Berrier* v. *Beneficial Finance, Incorporated* (U. S. D. C., N. D. Ind. 1964), 234 F. Supp. 204. In *Berrier*, the plaintiff claimed the defendant undertook a campaign of harassment, especially by contacting her employer, maliciously designed to coerce her

into paying a debt. The suit was for a willful tort, that is, the intentional and malicious infliction of mental and physical pain and suffering; she also claimed exemplary damages. She states in her brief that the action is not for defamation.

The court said:

". . . Indiana does not recognize as an independent tort the infliction of mental anguish unaccompanied by contemporaneous physical injury or the breach of some other duty. . . ."

Plaintiff cited the *Aetna Life Insurance Co.* case, *supra,* and in which the Federal Court stated that recovery was permitted for mental anguish caused the plaintiff by defendant's wrongful performance of an autopsy upon the remains of plaintiff's deceased husband. The court stated that:

" 'if this autopsy was legally held, there is no liability here on the part of the appellant * * *.' "

The court, speaking further, said:

". . . Furthermore, Indiana has not generally recognized mental anguish, unaccompanied by a contemporary physical injury, as grounds for a recovery in negligence. *Boston* v. *Chesapeake & Ohio Ry. Co.,* (1945), 223 Ind. 425, 61 N.E.2d 326. If physical injury was inflicted upon Mrs. Berrier, as was alleged, it was a result of mental stress also caused her, rather than inflicted independently of or contemporaneously with the mental stress. No acts of physical violence or contact were alleged. It is just such a recovery for mental anguish that the rule of the *Boston* v. *Chesapeake & Ohio Ry. Co.,* *supra,* seeks to preclude. Otherwise, mental anguish intentionally though reasonably caused could support a recovery. The Restatement of the Law of Torts, § 312 (1934), would permit recovery for mental anguish and resultant physical harm *only* where the defendant acted unreasonably."

The complaint in *Berrier,* like the case at bar, was based on malice.

The *Aetna* case and the *Indiana Railway Co.* case are a special class of cases unlike the case at bar and, therefore,

it is our opinion that they are not applicable to the facts in the case at bar and are not pertinent to the issues of the case at bar.

Appellees also quote from 64 A.L.R. 2d 108, which urges that the law will fill in "open spaces" whenever possible. In our opinion, there is no "open space" in the law presented in the case at bar. Appellees argue that "the accepted standards of right conduct" justify the awarding of damages for mental distress in the case at bar. With this contention we cannot agree.

It is the general rule of law that damages for mental suffering, pain, fright, shock, and mental anguish are recoverable only when accompanied by and resulting from a physical injury. 9 I.L.E. Damages, §§ 65-66. Damages for mental anguish are recoverable in special factual situations, such as *Aetna, supra,* and *Orr, supra,* but appellees have not cited, nor have we found, any case allowing damages for mental anguish in a fact situation similar to the case at bar.

Appellants cite *Leatherman* v. *Gateway Transportation Co.* (1964), 331 F. 2d 241, where the 7th Circuit U.S. Court of Appeals applied Indiana substantive law. In *Leatherman,* the plaintiff attempted to recover damages for actual physical injuries and mental anguish resulting from an automobile-truck accident. The court, in discussing damages, stated as follows:

> "Mental anguish or mental suffering are not compensable unless such conditions are coincident to, and the natural result of, actual physical injury. [Citing cases.] If no physical injury results from a negligent act, mental distress or anguish is not compensable. *Cleveland, C. C. & St. L. Ry. Co.* v. *Stewart,* 56 N.E. 917. On the other hand, if the negligent conduct causes any physical injury, and if there is any evidence that a mental condition resulted therefrom, the issue whether the mental illness is a natural and direct result of such physical injury is a question of fact. [Citing cases.]"

In the case of *Boston* v. *Chesapeake & O. Ry. Co.* (1945), 223 Ind. 425, 61 N.E.2d 326, the Supreme Court of Indiana, in discussing damages for mental anguish, stated as follows:

> "It is not disputed that a contemporaneous physical injury is necessary for one to recover for shock or fright. We believe, however that this is merely a minimum requirement for maintaining the action; that the complete rule would add that before recovery can be had for mental injury, including every form of distress, brooding, or fright, it must appear to be the natural and direct result of the physical injury, and not merely a remote consequence thereof. *Indianapolis St. R. Co.* v. *Ray* (1906), 167 Ind. 236, 78 N.E. 978."

In the case at bar, no physical injury or contact occurred. The evidence most favorable to appellees, in support of mental anguish, is nebulous at best. We find absolutely no evidence of harassment, as contended by appellees. Only two verbal contacts took place; Mrs. Wilson spoke very briefly to a representative of appellants, and Mr. Wilson had a short conversation with a clerk of appellants. The local prosecuting attorney told Mr. Wilson the case was civil in nature. Mr. Wilson claims the appellants' clerk was "insulting." The Wilsons were unable to rent their old house because of a lack of heat. Mr. Wilson no longer trusts big corporations and Mrs. Wilson will not talk with salesmen. Mr. Wilson "lost sleep" from worry and his business suffered.

None of the evidence set out above, in our opinion, is sufficient to justify the awarding of damages for mental anguish given in this case. There was absolutely no physical injury. We do not think it is reasonable to infer that the conversion of the tank led to such mental anguish as to justify the damages awarded. The evidence shows only annoyance or inconvenience, and as such was insufficient to sustain an award of punitive damages and damages for metal anguish.

This court cannot weigh the evidence, but can only examine the evidence most favorable to the appellees to determine

whether there was sufficient evidence to support the finding of the trial court. We have looked to the evidence most favorable to the appellees and all reasonable inferences to be drawn therefrom and have determined that there was not sufficient evidence of probative value to sustain the judgment awarding punitive damages and damages for mental anguish. *Phar-Crest Land Corporation* v. *Therber* (1969), 251 Ind. 674, 244 N.E.2d 644; *Brennan* v. *Reydell* (1962), 134 Ind. App. 298, 187 N.E.2d 492.

This court having found that it was error to award damages for mental anguish and punitive damages, we need not pass on the question of excessive damages, as raised by appellants, as the question is now moot.

This court finds that compensatory damages in the amount of $380.00, plus interest in the amount of $187.09 was properly awarded and the judgment should be affirmed as to said award. The court further finds that that part of the judgment awarding $2,000.00 for mental anguish for the taking and $5,000.00 for punitive damages was contrary to law and reversible error.

It is, therefore, decreed by this court that the trial court's judgment awarding plaintiffs-appellees $380.00 damages, the same being the stipulated value of the tank and contents, together with accrued interest at 6% from October 26, 1963, the date of the taking, in the amount of $187.09, he affirmed and that that part of the judgment awarding plaintiffs-appellees $2,000.00 for harassment, mental distress and anguish and $5,000.00 for punitive damages be reversed.

The court further orders this cause remanded to the trial court with instructions to correct its judgment entry of January 20, 1972, in compliance with this judgment.

Lybrook, J., concurs; Robertson, P.J., concurs with opinion.

### CONCURRING OPINION

ROBERTSON, P.J.—While concurring in the result reached by the majority in this case, I have serious reservations in utiliz-

ing "contemporaneous physical injury" cases as direct or analogous authority in reaching a decision. I would base the decision upon a failure of the plaintiff to prove special damages as a direct and proximate cause of the conversion. See *Miller* v. *Long* (1956), 126 Ind. App. 482, 131 N.E. 2d 348.

NOTE.—Reported at 290 N.E.2d 113.